CAROL RODGERS, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants.

Second District   No. 2—88—0920

Opinion filed July 17, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Ann Plunkett-Sheldon, Assistant Attorney General, of Chicago, of counsel), for appellants.

Henry G. Rose and Lewis Check, both of Loyola University Community Law Center, of Chicago, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Carol Rodgers (claimant), brought the instant action seeking administrative review of a final decision of the Illinois Department of Employment Security Board of Review (Department) that she was ineligible for unemployment benefits because she voluntarily left employment without good cause attributable to the employer. The Department appeals from the circuit court's order reversing its decision, contending that the circuit court's decision is clearly contrary to the statutory language set out in the disqualification provisions of section 601(A) of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 431(A)). The Department contends that its interpretation of the Act is entitled to considerable deference. The Department argues that the circuit court's decision is improperly based upon case law from other jurisdictions which is not binding in Illinois and on one Illinois decision which is not dispositive of the issue. We are not persuaded by the Department's contention and affirm.

The facts are not in dispute. Claimant held two jobs; she was employed as a full-time clerical worker for I.B. Diffusion from August 1985 through December 31, 1986, and she worked part time as a hostess and cashier for Walgreen Company (Walgreen's), from March 1, 1982, through January 11, 1987. Claimant's part-time job comprised approximately 10 hours per week at an hourly rate of $4. On December 31, 1986, she was laid off from her full-time job by I.B. Diffusion due to lack of work and filed an initial claim for unemployment bene-

fits on January 6, 1987. The Department prepared a claimant information sheet, dated January 7, 1987, which informed claimant that her maximum weekly unemployment benefit amount was $142. On January 9, 1987, Walgreen's notified the Department of claimant's possible ineligibility for unemployment benefits due to the fact that, as of that date, she continued to work on a part-time basis. Walgreen's indicated, "We believe our account should not be charged since the hiring agreement has not been broken." The record does not contain any such notice protesting eligibility from plaintiff's full-time employer, I.B. Diffusion.

On or about January 11, 1987, claimant voluntarily left her part-time position with Walgreen's because she relocated to a suburb and had transportation problems getting to work. At this juncture, claimant was ruled ineligible for unemployment benefits by a Department claims adjudicator on the basis that her voluntary leaving of the part-time job was not attributable to the employer and was without good cause. Claimant appealed this adjudication, and a hearing was held before a Department hearing referee on May 8, 1987, at which claimant and Walgreen's appeared and presented testimony and argument. The referee made the following findings of fact:

*"FINDINGS OF FACT:*

The Claimant was employed as a full time Clerical Worker for I.B. Diffusion from August of 1985 through December 31, 1986, at which time she was laid off due to lack of work.

The Claimant filed her initial claim for benefits on January 6, 1987, making the effective date of her claim January 4, 1987.

The Claimant had also worked as a part time Hostess-Cashier for Walgreen Company from March of 1982 until January 11, 1987. The Claimant worked for Walgreen Company at 5470 South Archer Avenue, in Chicago, on Saturdays and Sundays from 8:00 a.m. to 1:00 p.m., at the rate of $4.00 per hour.

The Claimant relocated from Chicago, Illinois to Roundlake Beach, Illinois. She advised Walgreens that she was moving, and requested a transfer to another location close to her new residence. The Employer agreed to transfer the Claimant to their facility in Crystal Lake, Illinois, and informed her that she would be working Fridays and Saturdays from 6:30 pm. to 3:00 a.m.

The Claimant was unable to work at the new location as scheduled due to transportation problems. She never reported for work, and never notified the Employer that she was leaving work.

The Claimant was not disqualified from receiving benefits due to her separation from employment from I.B. Diffusion."

The referee noted claimant's contention that although she voluntarily left her part-time job at Walgreen's for reasons not attributable to it, based on her involuntary separation from her full-time employer she should be considered eligible for partial unemployment benefits subject only to a reduction in the weekly benefit in the amount of her part-time earnings had she not left Walgreen's. (We note that claimant's average weekly earnings at Walgreen's of $40 were insufficient to reduce her weekly benefit pursuant to section 402 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 402).) The referee concluded that section 601(A) of the Act required that claimant be disqualified from receiving any unemployment benefits as she had voluntarily left work without good cause attributable to the employer, thus affirming the determination of the claims adjudicator. He noted, however, that claimant should not have been disqualified from benefits for the first week of her claim which preceded her leaving Walgreen's. Claimant appealed the referee's decision to the Department's Board of Review and submitted a brief citing case law from other jurisdictions in support of her contention. The Board of Review affirmed the referee's decision, and claimant sought administrative review in the circuit court.

The circuit court reversed the Department's decision in an order entered August 18, 1988, stating:

"While it is true that [claimant] has no claim against Walgreen's Company, the fact that she voluntarily left her part-time employment has no bearing on her involuntary dismissal from I.B. Diffusion. To deny all benefits to the [claimant] is a burden on her and a benefit to her prior employer and against the very policies developed under the Illinois Unemployment Insurance Act."

The circuit court based its conclusion on *Butler v. Board of Review, Illinois Department of Labor* (1985), 136 Ill. App. 3d 1079, 484 N.E.2d 318, as well as *Sticka v. Holiday Village South* (Minn. 1984), 348 N.W.2d 761, *Stiles v. Coit* (1985), 285 Ark. 212, 686 S.W.2d 405, and *Neese v. Sizzler Family Steak House* (Fla. App. 1981), 404 So. 2d 371, finding the unemployment compensation statutes in these States to be substantially similar to the Act.

On appeal, the Department contends that the circuit court erred in relying upon *Butler* and case law from foreign jurisdictions in that the former contained only *dicta* applicable to the instant issue and the latter is not binding on the courts of Illinois. The Department further contends that its interpretation of the statute which it administers is

entitled to considerable deference from a reviewing court.

■■ Addressing the Department's last contention first, we note its correct statement of the law, *viz.*, an agency's interpretation of its enabling statute is entitled to great deference from a reviewing court, unless that interpretation is clearly erroneous, arbitrary or unreasonable (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300.) We note, however, that an administrative agency's legal conclusions are not entitled to the same deference as its findings of fact. (*Carson Pirie Scott & Co. v. Department of Employment Security* (1987), 164 Ill. App. 3d 530, 535-36, 518 N.E.2d 161, 164, *leave to appeal allowed* (1988), 121 Ill. 2d 568, 526 N.E.2d 828), and when the facts are not in dispute and the issue on review is one of law, the court is not bound by the agency's determination (*Commonwealth Edison Co. v. Illinois Commerce Comm'n* (1989), 181 Ill. App. 3d 1002, 1007, 538 N.E.2d 213, 215-16; see also *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, (1989), 126 Ill. 2d 326, 331, 533 N.E.2d 1072, 1073-74). An agency's decision which is based upon an arbitrary, erroneous or unreasonable statutory construction cannot be allowed to stand. *Harrisburg-Raleigh Airport Authority*, 126 Ill. 2d at 331, 533 N.E.2d at 1073-74; see also *Winnetkans Interested in Protecting the Environment v. Pollution Control Board* (1977), 55 Ill. App. 3d 475, 480, 370 N.E.2d 1176, 1179.

■■■ The court's function in interpreting a statutory provision is to ascertain and give effect to the legislative intent underlying the statute; in order to accomplish this task, the reviewing court must look at the statute as a whole, taking into consideration its nature, its purpose and the evil the statute was intended to remedy. (*Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 816-17, 504 N.E.2d 1298, 1301.) We note that the cardinal purpose of the Act is to provide benefits to involuntarily unemployed individuals thereby alleviating their economic distress. (Ill. Rev. Stat. 1987, ch. 48, par. 300; see also *Burke v. Board of Review, Illinois Department of Labor* (1985), 132 Ill. App. 3d 1094, 1099, 477 N.E.2d 1351.) Although unemployment benefits are a conditional right, thus placing the burden of proof on a claimant to establish her eligibility, it is undisputed that the Act is remedial in nature and therefore is to be construed liberally in order to effectuate its beneficent purpose. *Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 576-77, 494 N.E.2d 1266, 1267; *Burke*, 132 Ill. App. 3d at 1099, 477 N.E.2d at 1355-56.

The question presented on review is whether section 601(A) of the

Act requires that Carol Rodgers, formerly a full-time employee at I.B. Diffusion and part-time employee for Walgreen Company, should be totally disqualified from receiving unemployment benefits on the ground that she voluntarily left her part-time job without good cause attributable to the employer. Section 601(A) provides as follows:

"§601. Voluntary leaving. A. An individual shall be ineligible for benefits for the week in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become reemployed and has had earnings equal to or in excess of his current weekly benefit amount ***." Ill. Rev. Stat. 1987, ch. 48, par. 431(A).

The appellate court has previously considered this exact issue in *Butler v. Board of Review, Illinois Department of Labor* (1985), 136 Ill. App. 3d 1079, 484 N.E.2d 318, a case which presents a factual pattern mirroring that of the instant case. Butler held two jobs, a full-time position with the Department of Mental Health and a part-time position as a bus driver. He was laid off from the full-time job and voluntarily quit the part-time job. Butler's application for unemployment benefits was denied because he voluntarily left work without good cause attributable to the employer as provided by section 601(A) of the Act. (Ill. Rev. Stat. 1981, ch. 48, par. 431(A).) The appellate court reversed and stated:

"[I]t would appear that he is entitled to benefits based on the fact that he was involuntarily laid off by DMH [his full-time employer]. Regardless of the circumstances under which he left his part-time job, he became entitled to [unemployment] benefits when he was laid off [from his full-time position]." 136 Ill. App. 3d at 1081, 484 N.E.2d at 320.

The court noted that section 239 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 349) permits individuals with part-time positions to collect unemployment benefits so long as the wages they earn are less than the weekly unemployment benefit amounts to which they are entitled. (136 Ill. App. 3d at 1081, 484 N.E.2d at 320), and, from this fact, the court concluded that Butler was eligible to receive unemployment benefits when he lost his full-time position. "The fact that he held a part-time job did not preclude him from receiving benefits. Consequently, the circumstances of his leaving his part-time job should not affect the receipt of benefits due to him as a result of being laid off by DMH." 136 Ill. App. 3d at 1081, 484 N.E.2d at 320.

■ Because the *Butler* court concluded that the record before it was incomplete, and because it appeared that Butler's full-time employer had not an opportunity to be heard, the court remanded the

matter to the Department of Labor for a determination of whether Butler was entitled to benefits based on his separation from his full-time employer. It is clear, however, that the court decided that Butler's voluntary termination of his part-time employment in no way precluded him from receiving unemployment benefits based upon the loss of his full-time job. In short, the court's conclusion on this issue is not mere *obiter dictum*; the *Butler* court stated a proposition which expressed its opinion regarding an issue it deliberately considered. Such a statement is judicial *dictum* and constitutes binding precedent. (See *In re Marriage of Drews* (1985), 139 Ill. App. 3d 763, 487 N.E.2d 1005, *aff'd* (1986), 115 Ill. 2d 201, 503 N.E.2d 339.) Thus we find the *Butler* holding dispositive of the issue before us. The fact that Rodgers, the instant claimant, held a part-time job with Walgreen's did not preclude her from receiving benefits based upon her involuntary separation from her full-time position at I.B. Diffusion; consequently, the circumstances surrounding her separation from her part-time position should in no way affect her entitlement to benefits due her as a result of her involuntary layoff.

Even if we accepted the Department's characterization of the *Butler* holding as a casual, unrelated statement of the court which did not go to the heart of the dispute, we would nevertheless accept the *Butler* court's reasoning as highly persuasive (see *Drews*, 139 Ill. App. 3d at 771, 487 N.E.2d at 1010; see also *Board of Trustees of Police Pension Fund v. Illinois Human Rights Comm'n* (1986), 141 Ill. App. 3d 447, 455-56, 490 N.E.2d 232, 237). The *Butler* rationale makes sense in light of the primary purpose of the Act and furthers its policies, while the Department's literal and rigid interpretation is impractical, does not serve the Act's purpose and is unnecessarily harsh. For these same reasons, we find the circuit court's reliance on case law from other jurisdictions to be entirely appropriate.

In her brief to this court, claimant offers decisions from six foreign jurisdictions; careful review of these cases and the State statutes upon which they are based convinces us of the correctness of the circuit court's decision. (See *Stiles v. Coit* (1985), 285 Ark. 212, 686 S.W.2d 405; *Tomlin v. California Unemployment Insurance Appeals Board* (1978), 82 Cal. App. 3d 642, 147 Cal. Rptr. 403; *Neese v. Sizzler Family Steak House* (Fla. App. 1981), 404 So. 2d 371; *Sticka v. Holiday Village South* (Minn. 1984), 348 N.W.2d 761; *Gilbert v. Hanlon* (1983), 214 Neb. 676, 335 N.W.2d 548; *Unemployment Compensation Board of Review v. Fabric* (1976), 24 Pa. Commw. 238, 354 A.2d 905.) Likewise, our review of the applicable unemployment compensation statutes in each of these jurisdictions reveals a substantially

similar statutory scheme to that set out in our own act in that, with the exception of the Nebraska Employment Security Law (Neb. Rev. Stat. §48—601 *et seq.* (1988)), each contains a declaration of public policy, a provision for disqualification from eligibility for benefits based upon a claimant's voluntary leaving without good cause attributable to an employer, a definition of unemployment which does not preclude a claimant from obtaining benefits while working part time, and a provision for partial benefits when a claimant does in fact hold a part-time position. (See Ark. Stat. Ann. §11—10—102 *et seq.* (1987); Cal. Unemp. Ins. Code §100 *et seq.* (West 1986); Fla. Stat. Ann. §443.011 *et seq.* (West 1989); Minn. Stat. Ann. §268.01 *et seq.* (West 1989); Pa. Stat. Ann. tit. 43, §751 *et seq.* (Purdon Supp. 1988).) Furthermore, the public policy underlying each of the statutory schemes in the six jurisdictions reviewed reveals a legislative intent to provide some form of economic security to persons involuntarily unemployed (see, *e.g., Gilbert,* 214 Neb. at 682, 335 N.W.2d at 552), and the remedial nature of each of these States' statutes requires that they be liberally construed in order to effectuate their beneficent purposes (see, *e.g., Stiles,* 285 Ark. at 216, 686 S.W.2d at 407; *Tomlin,* 82 Cal. App. 3d at 646, 147 Cal Rptr. at 406). We conclude, as did the courts in *Stiles, Tomlin, Neese, Sticka, Gilbert* and *Fabric,* that the Department's literal interpretation of the Act fails to further the Act's purposes and, in fact, imposes unnecessary hardships upon unemployed persons; thus, we reject it. Further, as the circuit court noted, to deny claimant benefits in this case works a benefit in favor of her former full-time employer. See also *Neese,* 404 So. 2d at 372.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WOODWARD and DUNN, JJ., concur.