245 N.J. Super. 551 (1991)
586 A.2d 313
LORRAINE GOODMAN, PETITIONER-APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR AND INDUSTRY AND J.F.D., RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1990.
Decided February 4, 1991.
*552 Before Judges KING, R.S. COHEN and STERN.
Christine Allen-Jackson argued the cause for appellant (Camden Regional Legal Services, attorney; William Suarez-Potts, on the brief).
El-Rhonda M. Williams, Deputy Attorney General, argued the cause for respondents (Robert J. Del Tufo, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, P.J.A.D.
This case concerns the loss of unemployment compensation benefits received upon layoff from full-time employment because a worker later voluntarily leaves a part-time job. In this case, novel in this jurisdiction, we resolve the issue in favor of the worker. We reverse and reinstate the entitlement to benefits denied by the Division of Employment and Disability Insurance.
The claimant, Lorraine Goodman, was a shirt-presser at Turi Cleaner's in Merchantville, Camden County from June 1988 through March 1989. She earned $321 a week. She was fired from her job on March 31 after she failed to report for work because of a plumbing problem, "a major disaster," at her home. She then filed for unemployment benefits which she started receiving on April 9. While receiving unemployment benefits, claimant took a part-time telemarketing job with JFD *553 of Pennsauken where she started on April 12 with full knowledge by the Division.
Claimant was initially eligible for and started receiving the maximum benefit of $193 per week as of April 9. She worked at JFD part-time at $4 per hour for only three weeks. During the weeks ending April 15, 22 and 29, she earned $28, $52 and $16, respectively, at JFD. For the week ending April 22, when she earned $52, her unemployment compensation benefits were reduced from $193 to $179 because she had earned above the permitted maximum that week. Her earnings for the other two weeks during which she worked part-time did not reduce her maximum unemployment benefits of $193.
Claimant received total benefits of $2,109 over the 11 week period during which she collected benefits, i.e., the week ending April 15 to the week ending June 24. As noted, only during the week ending April 22 when she made $52 was her unemployment compensation benefit reduced, and then by only $14.
Claimant left her part-time job at JFD late in April because she had to schedule appointments for interviews for full-time work during the morning hours. She had worked at JFD from 9 a.m. to noon. JFD could not schedule her for part-time work at later hours. As claimant put it at her hearing in August 1989:
Q. What was the reason for that [leaving JFD]?
A. Well, I had set up a few appointments. After calling her two days in one week to tell her that I wouldn't be in because I had an appointment set up, I felt bad about not you know, not living up to my expectations about coming in, and asked her if she could give me the hours from four on, and she couldn't. From four o'clock in the evening. That way I wouldn't lose any appointments that I had set up for looking for a full time job.
Q. Couldn't you set up the appointments for the afternoon instead of the morning?
A. If I had been home in the morning to accept it and arrange for it and by being a telephone service there I couldn't ask them to call there.
Q. Now my question is couldn't you have made appointments for jobs in the afternoon instead of the morning?

*554 A. Well it would be unlikely if I was anxious about a job to tell them what time I could come in you know in the evening, they would think I didn't want to work. I would suppose.
The Director of the Division of Employment Disability and Insurance informed claimant on July 24, 1989 that she was not entitled to benefits as of April 9 and was liable for an over-payment in the full amount of all benefits received for the 11 week period, $2,109. The Director had concluded at that time that claimant had voluntarily quit her job at Turi Cleaners without good cause.
Claimant appealed the Director's determination. At the Appeals Tribunal hearing on August 17, 1989, the Appeals Examiner made two determinations. He reversed the Director's conclusion that claimant was disqualified from receiving any benefits from April 9 under N.J.S.A. 43:21-5(a) because she voluntarily quit her job with Turi Cleaners. However, he affirmed, in large part, the Director's overall ruling of disqualification by concluding that she had voluntarily quit her part-time job at JFD without good cause attributable to her work. The Appeals Examiner ruled that claimant was therefore ineligible for benefits from April 16 forward. She appealed to the Board of Review which affirmed the Appeals Tribunal. She now appeals to us and we reverse. The Division does not challenge the finding that claimant was qualified for benefits upon getting fired by Turi's Cleaners.
The Unemployment Compensation Law (Act), N.J.S.A. 43:21-1 to -24.19, enacted in 1936, "represents the policy of the State to further the welfare of the people by affording protection against the shocks and rigors of [involuntary] unemployment." Provident Inst. for Sav. in Jersey City v. Div. of Employ-Sec., 32 N.J. 585, 590, 161 A.2d 497 (1960). The applicable principles of construction of the Act were summarized recently by the Supreme Court in Yardville Supply Co. v. Board of Review, Dept. of Labor., 114 N.J. 371, 374, 554 A.2d 1337 (1989). The law is to be construed liberally in favor of allowance of benefits, "in order to further its remedial and *555 beneficial purposes." Id. But because the fund must be protected "against claims by those not intended to share in its benefits," the policy of the law is advanced as well when benefits are denied in improper cases. Id. From these disparate canons, we derive not any essential tension in applicable principles of construction but an overriding purpose that common sense prevail in application of the Act.
Claimant contends that the primary purpose of the Act was frustrated when she was disqualified from unemployment compensation benefits for leaving a part-time job which only marginally affected the amount of her benefits (from $193 to $179) during only one of the three weeks in which she had worked part-time during the 11 total weeks in which she collected benefits. Appellant asserts that the absolute disqualification for a voluntary quit under N.J.S.A. 43:21-5(a)[1] was meant to apply where a claimant has quit primary employment voluntarily, not where she leaves a subsequently-acquired part-time job.
Claimant relies on a seemingly uncontradicted line of seven cases from other jurisdictions resolving like disputes under cognate provisions of the statutes of these sister states enacted pursuant to the federal unemployment compensation scheme, a legacy of the social legislation spurred by the Great Depression of the 1930's. The precise question has never been considered in this State. The purpose of this federally-sponsored program was explained by Chief Justice Burger in California Department of Human Resources v. Java, 402 U.S. 121, 131-132, 91 S.Ct. 1347, 1353-54, 28 L.Ed.2d 666, 674 (1971):

*556 The purpose of the Act [Social Security Act] was to give prompt if only partial replacement of wages to the unemployed, to enable workers "to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief." Unemployment benefits provide cash to a newly unemployed worker "at a time when otherwise he would have nothing to spend," serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity. Further, providing for "security during the period following unemployment" was thought to be a means of assisting a worker to find substantially equivalent employment. The Federal Relief Administrator testified that the Act "covers a great many thousands of people who are thrown out of work suddenly. It is essential that they be permitted to look for a job. They should not be doing anything else but looking for a job." Finally, Congress viewed unemployment insurance payments as a means of exerting an influence upon the stabilization of industry.
These federal-state cooperative unemployment programs are financed in part by grants from the federal government pursuant to the Social Security Act, 42 U.S.C.A. §§ 501-503. Id. at 402 U.S. at 125, 91 S.Ct. at 1350, 28 L.Ed.2d at 670; Pioneer Potato Co. v. Div. of Employment Security, 17 N.J. 543, 546-547, 111 A.2d 888 (1955).
Our Act does not define "work" specifically in the context of the total disqualification provisions of N.J.S.A. 43:21-5(a) ("left work voluntarily without good cause attributable to such work"). The Board categorically contends that the provision is unqualified and is meant to discourage workers from quitting full-time or part-time jobs under all circumstances. We respect but are not bound by an agency's interpretation of a statute or its determination on a strictly legal issue, which this is. Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973); Petition of Adamar of New Jersey, 222 N.J. Super. 464, 469, 537 A.2d 704 (App.Div. 1988); Jaeger v. State, 176 N.J. Super. 222, 227, 422 A.2d 794 (App.Div. 1980).
The Act does permit a claimant to work part-time and still collect partial benefits. In this case, for the week ending April 22 when appellant made $52 her benefits were reduced from $193 to $179. The Act provides that an individual "if eligible and unemployed shall be paid an amount equal to his weekly benefit rate less any remuneration paid or payable to him for *557 such week in excess of 20% of his weekly rate...." N.J.S.A. 43:21-3(b). The Act mandates that benefits are payable only if a claimant is both eligible and unemployed. The Act statutorily defines "unemployed" and includes therein individuals working in part-time jobs whose remuneration is less than the weekly unemployment benefit rate. N.J.S.A. 43:21-19(m). An individual is "eligible" by compliance with the conditions of N.J.S.A. 43:21-4 if not disqualified under N.J.S.A. 43:21-5. A claimant acquiring a part-time job, like appellant here, does not destroy her status automatically as unemployed and does not defeat her eligibility for benefits. Only the amount of her benefits are affected.
We appreciate the need to preserve the fund for qualified and deserving claimants. Indeed, we so stated and ruled to this effect in Zielenski v. Board of Review, 85 N.J. Super. 46, 203 A.2d 635 (App.Div. 1964). There claimant quit his regular welder's job because it was unsteady; he only had worked one or two days a week in 1963 in the Todd Shipyard in Hoboken. We concluded that "this did not constitute good cause for giving up this partial employment for no employment at all." Id. at 52, 203 A.2d 635. We said that an "employee's reason for leaving his employment must meet the test of ordinary common sense and prudence." Id. In Zielenski, we said that "this reasoning does not apply where the claimant is gainfully employed and could have continued working until he found a better job." But in Zielenski, we distinguished the situation in the case now before us where an unemployed claimant, already receiving benefits, may be justified in refusing a job at "materially lower wages" because she should have a reasonable opportunity to seek work in line with her demonstrated earning capacity. Id. at 53, 203 A.2d 635. Moreover, in Zielenski there was no proof that claimant could not have looked for suitable work on the three or four days a week when he did not work on his regular, albeit "unsteady," job. In the case before us, claimant's testimony clearly established that her low-paying new-found job with JFD was interfering with her search for suitable employment, *558 and there was no finding to the contrary. There was no such proof in Zielenski.
We adopt the view of our seven sister states as expressed in the opinions relied upon by claimant. These jurisdictions have determined that the purpose of their unemployment compensation acts are really frustrated when benefits are denied to a claimant who quits a part-time job which had not previously affected the claimant's statutorily-defined status of unemployed. In each of these cases, a claimant who had met the statutory requirements for receiving benefits because of involuntary discharge from a full-time job was denied unemployment benefits by the agency because of subsequently and voluntarily leaving "work" or "employment" at a part-time job. In reversing and reaching a result which allowed these claimants at least partial unemployment benefits despite leaving their part-time job, these courts found that the terms "work" or "employment" as used in the absolute disqualification provisions of their state's unemployment compensation acts were contextually ambiguous and should be judicially interpreted to apply only to the last full-time or steady employment voluntarily left by a claimant.
For example, in Rodgers v. Department of Employment Security, 186 Ill. App.3d 194, 134 Ill.Dec. 168, 542 N.E.2d 168 (1989), claimant was laid off from her full-time job. Shortly after that she quit her part-time job because she had to relocate. The Illinois appellate court held that she was not totally disqualified from benefits because she voluntarily left her part-time job, saying "the circumstances surrounding her separation from her part-time position should in no way affect her entitlement to benefits due her as a result of her involuntary layoff." 134 Ill.Dec. at 168, 542 N.E.2d at 172. The court found the state agency's interpretation of the act: "literal and rigid ... impractical, [it] does not serve the Act's purpose and is unnecessarily harsh." Id.
*559 In Tomlin v. California Unemployment Ins. Appeals, 82 Cal. App.3d 642, 147 Cal. Rptr. 403 (Ct.App. 1978), the court concluded that the disqualifying quit should not relate to the "last employment of any kind prior to the filing of benefits." Id., 147 Cal. Rptr. at 408. It must refer "to significant or regular employment to effectuate the purposes of the act." Id. Benefits could be reduced appropriately but not lost entirely. In Sticka v. Holiday Village South, 348 N.W.2d 761 (Minn. 1984), the Supreme Court of Minnesota said that "since [appellant] qualified for at least partial benefits when she had part-time work, it makes no sense that on cessation of the part-time work for any reason, she should become disqualified from any and all benefits." Id. at 763. See also Stiles v. Coit, 285 Ark. 212, 686 S.W.2d 405 (1985); Gilbert v. Hanlon, 214 Neb. 676, 335 N.W.2d 548 (1983); Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. Dist. Ct. App. 1981); Unemployment Compensation Board of Review v. Fabric, 24 Pa. Commw. 238, 354 A.2d 905 (Commw.Ct. 1976). We agree, as these cases suggest, that partial disqualification may occur in an appropriate case.
In the case before us, the record is clear that claimant was justified in leaving JFD because the part-time job interfered with her search for suitable employment. Moreover, the part-time $4 an hour telemarketing job was not really suitable employment in the circumstances. See Wojcik v. Bd. of Rev., 58 N.J. 341, 277 A.2d 529 (1971). There a chemical engineer, unable to find engineering work after termination from his engineering job, accepted a full-time position doing general factory work at a substantial reduction in wages. He was forced to voluntarily leave the factory job a month later when the heavy lifting required by the position aggravated a pre-existing back injury. The Supreme Court ruled that the claimant had voluntarily left work without good cause attributable to the work but should not be penalized by loss of unemployment benefits for having left, after a brief period, work he was not required to take in the first place because it was not "suitable" within the meaning of N.J.S.A. 43:21-5(c). Id. at 345, 277 A.2d *560 529. The Court found that the general factory work was not suitable because of the substantial reduction from prior earnings, inconsistency with prior training and experience, and the risk to his health and safety. Id. at 345, 277 A.2d 529.
Our Act states that:
In determining whether or not any work is suitable for an individual, consideration shall be given to the degree of risk involved to health, safety, and morals, the individuals's physical fitness and prior training, experience and prior earnings, the individual's length of unemployment and prospects for securing local work in the individual's customary occupation, and the distance of the available work from the individual's residence. [N.J.S.A. 43:21-5(c)(1).]
Claimant was a full-time shirt-presser with Turi Cleaners at $321 a week. At JFD she worked three hours a day at $4 per hour making telemarketing calls. During the three weeks at JFD, she worked a total of 24 hours. A substantial reduction in salary in itself has been ruled determinative that work is not "suitable" within the meaning of N.J.S.A. 43:21-5(c) and a refusal to accept such a position does not disqualify the individual from unemployment benefits. Johns-Manville v. Bd. of Rev., 122 N.J. Super. 366, 300 A.2d 572 (App.Div. 1973), cited with approval in Goodman v. London Metals Exchange, Inc., 86 N.J. 19, 37, 429 A.2d 341 (1981). Further, claimant testified that the part-time position interfered with her search for suitable full-time employment. As we conclude that the job at JFD was not "suitable employment", claimant would not have been required to accept it in the first place.
The Board's order is reversed; appellant need not repay the benefits of $2,109.
NOTES
[1] This section of the statute in pertinent part states:

An individual shall be disqualified for benefits:
(a) For the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed and works four weeks in employment, which may include employment for the federal government, and has earned in employment at least six times the individual's weekly benefit rate, as determined in each case.