EMAS, J.
Wichelson Delhomme (“Delhomme”) appeals a final order of the Unemployment Appeals Commission (“UAC”) which affirmed the decision of the unemployment compensation appeals referee. The referee determined that Delhomme was disqualified from receiving unemployment benefits on the basis that he voluntarily left his job without good cause attributable to the employer.
The issue in this case is whether an employee who voluntarily quits a part-time job after being dismissed from full-time employment is subject to a total disqualification of unemployment benefits. We affirm the decision of the UAC.
Delhomme was laid off from his full-time position at Rainbow Tile in early 2008. As a result, Delhomme was eligible for, and began receiving, unemployment benefits. At the time of his dismissal, Delhomme was also working part-time at Long John Silver’s. The neighborhood in which the Long John Silver’s is located was known by the police to be a high crime area. Delhomme told his manager he was concerned about the neighborhood being unsafe, and raised a particular concern that his obligation to close the store (around 10 or 11:00 p.m.) could be dangerous. The manager told Delhomme “he had nothing to worry about and nothing was going to happen.”
Delhomme never made these concerns known to anyone other than his manager, and he took no other actions based upon these concerns. Further, no incidents of crime occurred at that particular Long John Silver’s restaurant while Delhomme *207 worked there. Nevertheless, in July of 2008, and within a week of speaking with his manager about his apprehensions, Del-homme quit his job, admittedly due to his fear that he might be robbed.
Delhomme did not apply for additional benefits after quitting his part-time position at Long John Silver’s. In January of 2010, however, a Notice of Determination was issued to Delhomme, advising him that he was no longer eligible to receive benefits since his reason for quitting his part-time job at Long John Silver’s was not attributable to the employer. Delhomme was also advised that he had been overpaid in unemployment benefits. Delhomme timely appealed, contending that the benefits he had been receiving were based upon his dismissal from Rainbow Tile, not his resignation from Long John Silver’s.
On March 9, 2010, Delhomme and the employer’s representative participated in a hearing before the appeals referee. At the hearing, Delhomme admitted that he quit his job at Long John Silver’s, that he was never robbed, and that getting robbed was just “a possibility.” He testified that he quit his part-time job because he did not feel safe at work, and he conceded that he neither spoke to anyone above his manager nor put his concerns in writing.
The appeals referee issued an order in which it determined that Delhomme voluntarily quit his job without good cause attributable to his employer and was overpaid $229 in benefits. The UAC adopted the referee’s factual findings and affirmed the referee’s decision. This appeal followed.
Section 443.101, Florida Statutes (2010) provides:
An individual shall be disqualified for benefits:
(l)(a) For the week in which he or she has voluntarily left work without good cause attributable to his or her employing unit ...
1. Disqualification for voluntarily quitting continues for the full period of unemployment next ensuing after the individual has left his or her full-time, part-time, or temporary work voluntarily without good cause and until the individual has earned income equal to or greater than 17 times his or her weekly benefit amount ... the term “good cause” includes only that cause attributable to the employing unit which would compel a reasonable employee to cease working or attributable to the individual’s illness or disability requiring separation from his or her work ...
The current provision was amended in 1999; at that time, the Florida Legislature added the following underlined language:
Disqualification for voluntarily quitting continues for the full period of unemployment next ensuing after the individual has left his or her full-time, part-time, or temporary work voluntarily without good cause....
Ch. 99-131, § 2, Laws of Fla., at 781, codified at § 443.101(l)(a)l., Fla. Stat. (2010).
Our Court recently construed the 1999 amendatory language. In Rumayor v. Biohealth Med. Lab., Inc., 45 So.3d 984 (Fla. 3d DCA 2010), we found this statutory language unclear and looked to the legislative history, including the staff analysis, to determine the Legislature’s intent.[1] *208 We noted in Rumayor that the committee report and staff analysis reveal the 1999 amendment was intended to address the problem of “a claimant who is laid off of a full-time job, and upon being awarded unemployment benefits, quits a part-time job.” Id. at 985. We quoted the specific staff analysis to support this conclusion:
In 1981, Florida’s Second District Court of Appeal held in Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981), that an individual is not totally disqualified for benefits when he/ she works a full-time and part-time job simultaneously, qualifies for partial unemployment benefits based on being laid off by the full-time employer, then subsequently quits the part-time job. The court ruled that, in such instances the individual is entitled to partial benefits which is equal to the weekly benefit amount reduced by what the individual would have earned had he/she continued the part-time employment. The district courts have continued to follow the Neese decision, despite legislative amendment in 1994 aimed at overturning Neese.
Id. at 985-86, (quoting Staff Analysis of Finance & Taxation Comm. FoR H.B. 1951, 16th Leg., Reg. Sess., Rep. on Unemployment Comp. (Fla. 1999)).
The staff analysis further explained the intended effect of this 1999 amendment:
The bill would overturn Neese and its progeny Berger v. ASOLO Center for the Performing Arts, Inc., 686 So.2d 649 (Fla. 2d DCA 1996); Alderman v. Unemployment Appeals Commission, 664 So.2d 1160 (Fla. 5th DCA 1995); Tierney v. Florida Unemployment Appeals Commission, 640 So.2d 154 (Fla. 2d DCA 1994); Stewart v. Dollar Tree, 635 So.2d 73 (Fla. 1st DCA 1994); Coelho v. Balasky, 631 So.2d 335 (Fla. 3d DCA 1994). This bill would require the total disqualification of individuals who work a full-time and part-time job simultaneously and qualify for partial benefits based on being separated from the full-time employer, if they subsequently quit the part-time job.

Id.

Thus, where an employee is laid off from his full-time job, obtains unemployment benefits, and then voluntarily quits his remaining part-time job, the act of voluntarily quitting the part-time job is a disqualifying event under section 443.101(l)(a)l.
Here, Delhomme unquestionably qualified for benefits as a result of his dismissal from his full-time position at Rainbow Tile. Delhomme concedes, however, that after being dismissed from his full-time position, he voluntarily quit his part-time job at Long John Silver’s, based on his safety concerns. Because Delhomme voluntarily quit his part-time position without good cause attributable to his employer, he is disqualified from all benefits.
We recognize that some may perceive an inequity created under these factual circumstances. That one will be disqualified from benefits legitimately received after being dismissed from a full-time position due to a subsequent resignation from a dissatisfying part-time job creates a disincentive for a dismissed employee to mitigate his losses. The Legislature, however, has made plain its intent in amending section 443.101(l)(a)l., and “when construing a statutory provision, legislative intent is the polestar that guides our inquiry[.]” McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998). It is neither our duty nor our prerogative to modify this clearly ex *209 pressed legislative intent. Holly v. Auld, 450 So.2d 217, 219 (Fla.1984).
Affirmed.

. Although there may not be judicial unanimity on the value of relying upon legislative staff analysis in discerning legislative intent, see, e.g., Massey v. David, 979 So.2d 931 (Fla. 2008); GTC, Inc. v. Edgar, 967 So.2d 781, 789 n. 4 (Fla.2007), it is clear that such analyses can at least provide "one touchstone of the collective legislative will.” White v. State, 714 So.2d 440, 443 n. 5 (Fla.1998), (quoting Sun *208 Bank/S. Fla., N.A. v. Baker, 632 So.2d 669, 671 (Fla. 4th DCA 1994)).