No. 110,275

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEMOND JOHNSON,
*Appellee*,

v.

KANSAS EMPLOYMENT SECURITY BOARD OF REVIEW,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2013 Supp. 44-709(i), any action of the Kansas Employment Security Board of Review is subject to review in accordance with the Kansas Judicial Review Act which narrows and defines the proper scope of review pursuant to K.S.A. 2013 Supp. 77-621(c).

2.

The burden of proving the invalidity of agency action is on the party asserting invalidity under K.S.A. 2013 Supp. 77-621(a)(1).

3.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings.

4.

When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily

found it in. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent.

5.

K.S.A. 2013 Supp. 44-706 states in relevant part: "An individual shall be disqualified for benefits:  (a) If the individual left work voluntarily without good cause attributable to the work or the employer."

6.

When construing statutes to determine legislative intent, an appellate court must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. The court must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation.

7.

K.S.A. 2013 Supp. 44-705 sets forth the conditions under which an individual is eligible to receive unemployment compensation benefits, including the threshold requirement that the individual be "unemployed." K.S.A. 2013 Supp. 44-703(m) defines unemployment as "[A]n individual shall be deemed 'unemployed' with respect to any week during which such individual performs no services and with respect to which no wages are payable to such individual, or with respect to any week of less than full-time work if the wages payable to such individual with respect to such week are less than such individual's weekly benefit amount."

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed August 1, 2014. Affirmed.

2

*Justin McFarland*, special assistant attorney general, deputy general counsel, of Kansas Department of Labor, for appellant.

*Demond Johnson*, appellee pro se.

Before BRUNS, P.J., PIERRON and STANDRIDGE, JJ.

PIERRON, J.: The Kansas Employment Security Board of Review (Board) appeals the district court's decision reinstating Demond Johnson's unemployment compensation benefits. Johnson, who concurrently held a position as a computer programmer with the State of Kansas and a part-time position as a fast food worker at McDonald's, began receiving unemployment compensation benefits after he was separated from his computer programming position with the State. The Board contends the district court erred in finding Johnson was not disqualified from receiving these benefits when he later voluntarily left his part-time position at McDonald's. We affirm the district court's ruling.

Johnson began employment as a computer programmer with the State in December 2006. In January 2011, while still employed by the State, Johnson began working part-time at McDonald's. Johnson was separated from his computer programming position in September 2011 and shortly thereafter began receiving unemployment compensation benefits. Johnson continued to work at McDonald's on a part-time basis and duly reported this work and income to the Kansas Department of Labor (KDOL).

In November 2011, Johnson asked the manager at McDonald's to stop scheduling him until further notice. Johnson stated he had decided to go to San Diego to look for suitable work as a computer programmer but he was not sure at that time whether he would stay in San Diego or return to Kansas.

3

Johnson remained in San Diego and began taking evening classes in January 2012 to earn a degree and improve his computer programming credentials. At the end of January, he submitted a K-Ben 317 form for approval of school attendance to KDOL. Although the record is not entirely clear, it appears that KDOL determined Johnson's school attendance did not disqualify him from unemployment compensation benefits.

On February 5, 2012, Johnson informed McDonald's he would not be returning to work. He then informed KDOL that he had formally resigned from his part-time position at McDonald's as of February 5. Johnson told KDOL that his last day of work at McDonald's was in November 2011 and he had moved to California to look for a place to live and check out schools.

An examiner with KDOL notified Johnson he was disqualified from unemployment compensation benefits under the provisions of K.S.A. 2013 Supp. 44-706 because he left work without good cause attributable to the work or the employer. The disqualification began as of February 5, the day Johnson formally resigned from McDonald's. Johnson stopped receiving any benefits as of February 5, although he continued to keep the necessary records and submit weekly unemployment claims.

Johnson appealed the examiner's decision to the KDOL appeals referee. A hearing was held before the appeals referee, at which Johnson appeared as the claimant and McDonald's appeared as the employer. The State did not appear as an employer. At the hearing, Johnson clarified he was not seeking any unemployment compensation benefits related to his job at McDonald's. He argued he should have continued to receive benefits related to the loss of his computer programming position with the State, to which he was clearly entitled. Johnson asked to have those benefits restored, including all back payments.

The referee upheld the examiner's decision disqualifying Johnson from benefits. The referee found Johnson had begun receiving benefits when he separated from his computer programming position and he had properly reported his McDonald's work and income to the KDOL. Johnson then voluntarily left his part-time position at McDonald's. The referee found that under K.S.A. 2013 Supp. 44-706(a), Johnson's voluntary departure from McDonald's without good cause attributable to the work or the employer disqualified Johnson from all benefits, including those he began receiving after he was separated from his computer programming position:

> "[Johnson] was eligible to draw unemployment benefits after separating from his state employment. This is despite the fact [Johnson] was still receiving some wages from his other job with McDonalds. But when [Johnson] separated from McDonalds, he was at that time completely separated from employment. That separation from employment triggers a renewed look at [Johnson's] underlying claim for benefits. [Johnson] was properly cleared for benefits following his separation from state employment. But that qualification does not last into perpetuity. Further separations from employment impact the claim.
>
> "Unfortunately, [Johnson] left work without good cause as defined by the employment security law. Choosing to attend school may be a good personal choice on many levels, but Kansas law does not recognize it as being good cause for leaving work and still being qualified to receive unemployment benefits. The choice to obtain more education is not one of the specific exceptions enumerated [in K.S.A. 2013 Supp. 44-706(a)(1)-(12)]."

Finally, the referee found Johnson became disqualified for benefits on November 7, 2011, the day after his last actual day of work at McDonald's, rather than on February 5, 2012, the day he gave formal notice that he would not return. The referee amended the disqualification date accordingly. Johnson appealed the referee's decision to the Board, which affirmed the referee's decision in its entirety.

5

Johnson petitioned for judicial review of the Board's decision by the district court. The district court reversed, finding the Board had interpreted K.S.A. 2013 Supp. 44-706(a) too broadly in determining that Johnson's voluntary departure from McDonald's also disqualified him from receiving benefits related to his separation from his computer programming position with the State. First, the court considered that such a broad reading was out of line with the statutorily-defined public policy of Kansas Employment Security Law (KSEL). Second, the court found that Johnson's position at McDonald's was not suitable work for a computer programmer and therefore his decision to leave such work did not disqualify him from receiving benefits related to the loss of his position as a computer programmer.

The Board appeals the decision of the district court.

The Board first contends that under the plain language of K.S.A. 2013 Supp. 44-706(a), a claimant who leaves any work, whether or not it is the claimant's primary employment, is subject to disqualification from any and all unemployment compensation benefits if the departure is voluntary and without good cause attributable to the work or the employer. Thus, even a claimant like Johnson who receives benefits while continuing to work a part-time or secondary job may lose those benefits if he or she voluntarily leaves the secondary job.

Johnson argues that his part-time position at McDonald's was not suitable work for his customary occupation as a computer programmer. Therefore, his voluntary departure from his part-time position at McDonald's should not have disqualified him from the benefits he was receiving in relation to his separation from his computer programming position, especially since he left McDonald's to improve his computer programming credentials and seek work in his customary occupation.

6

Under K.S.A. 2013 Supp. 44-709(i), any action of the Board is subject to review in accordance with the Kansas Judicial Review Act (KJRA), which narrows and defines the proper scope of review. See K.S.A. 2013 Supp. 77-621(c). An appellate court exercises the same statutorily-limited review of the agency's action as the district court, as though the appeal had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). The burden of proving the invalidity of agency action is on the party asserting invalidity. K.S.A. 2013 Supp. 77-621(a)(1).

The parties agree on all the material facts of this case—Johnson concurrently held a full-time position as a computer programmer with the State and a part-time position as a fast food worker at McDonald's, he began receiving unemployment compensation benefits after he was separated from his computer programming position while he was still working at McDonald's, and he later voluntarily left McDonald's in order to pursue school and job opportunities in San Diego.

The only dispute is whether the Board correctly interpreted the voluntary departure disqualification of K.S.A. 2013 Supp. 44-706(a) and correctly applied it to the facts of this case to find that Johnson was disqualified from any and all unemployment compensation benefits when he voluntarily left his position at McDonald's. This is an appropriate question for judicial review. See K.S.A. 2013 Supp. 77-621(c)(4) (court may grant relief if agency erroneously interpreted or applied the law). Resolution of this issue requires the interpretation of the KESL, K.S.A. 44-701 *et seq.* An appellate court exercises unlimited review over questions of statutory interpretation, with no deference given to the agency's interpretation. *Powell*, 290 Kan. at 567.

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must first attempt to

7

ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013). Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. *Northern Natural Gas Co.*, 296 Kan. at 918.

K.S.A. 2013 Supp. 44-706 states in relevant part: "An individual shall be disqualified for benefits: (a) If the individual left work voluntarily without good cause attributable to the work or the employer . . . ."

The ambiguity in K.S.A. 2013 Supp. 44-706(a) becomes apparent when applied to situations in which the claimant holds multiple jobs. The statute is silent as to whether the claimant's voluntary departure from one job thereby disqualifies him or her from benefits related to all jobs—the interpretation favored by the Board—or whether the claimant is only thereby disqualified from benefits related to the job he or she voluntarily left. See *Gilbert v. Hanlon*, 214 Neb. 676, 679-80, 335 N.W.2d 548 (1983) (statute stating that a claimant "'shall be disqualified for benefits . . . [f]or the week in which he or she has left work voluntarily without good cause'" was ambiguous in factual situations involving multiple jobs); *McCarthy v. Iowa Employment Sec. Comm.*, 247 Iowa 760, 761, 764, 76 N.W.2d 201 (1956) (statute disqualifying individual from benefits "'[if] he has left his work voluntarily without good cause'" was ambiguous where individual concurrently held two jobs). Since the statute is ambiguous when applied to this factual scenario, we may look beyond the statutory language to construe the legislature's intent.

The Kansas Legislature has provided courts with specific guidance for interpreting provisions of the KESL:

8

"As a guide to the interpretation and application of [KESL], the public policy of this state is declared to be as follows: Economic insecurity, due to unemployment, is a serious menace to health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. . . . The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure . . . for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed. All persons and employers are entitled to a neutral interpretation of the employment security law" K.S.A. 2013 Supp. 44-702.

As the district court noted, the Board's interpretation of K.S.A. 2013 Supp. 44-706(a) to disqualify a claimant from unemployment compensation benefits related to *all* jobs—including those jobs the claimant did not voluntarily leave—is at odds with the public policy to protect workers and their families from economic insecurity due to involuntary unemployment. This alone may be sufficient reason for us to reject the Board's interpretation.

But in addition to these public policy considerations, the Board's interpretation of K.S.A. 2013 Supp. 44-706(a) is also unreasonable when viewed in light of the KESL as a whole.

When construing statutes to determine legislative intent, an appellate court must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. *Northern Natural Gas Co.*, 296 Kan. at 918. The court must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *Herrell v. National Beef Packing Co.*, 292 Kan. 730, 745, 259 P.3d 663 (2011).

9

K.S.A. 2013 Supp. 44-705 sets forth the conditions under which an individual is eligible to receive unemployment compensation benefits, including the threshold requirement that the individual be "unemployed." K.S.A. 2013 Supp. 44-703(m) defines "[u]nemployment":

> "An individual shall be deemed 'unemployed' with respect to any week during which such individual performs no services and with respect to which no wages are payable to such individual, or with respect to any week of less than full-time work if the wages payable to such individual with respect to such week are less than such individual's weekly benefit amount."

An individual's weekly benefit amount is calculated under K.S.A. 2013 Supp. 44-704(b) as a percentage of the individual's total wages for insured work over the base period of time. Finally, K.S.A. 2013 Supp. 44-704(e) sets forth the weekly benefit actually payable to eligible unemployed individuals:

> "Each eligible individual who is unemployed with respect to any week . . . shall be paid with respect to such week a benefit in an amount equal to such individual's determined weekly benefit amount, less that part of the wage, if any, payable to such individual with respect to such week which is in excess of the amount which is equal to 25% of such individual's determined weekly benefit amount . . . ."

Reading these statutes together, it is clear that a claimant may be unemployed within the meaning of the KESL even if he or she works part-time. Although wages from the claimant's part-time work may reduce the weekly benefits payable to the claimant, the claimant may still be deemed unemployed. This appears to be the case whether the claimant is working part-time at the moment he or she becomes unemployed within the meaning of K.S.A. 2013 Supp. 44-703(m) or whether he or she subsequently begins part-time work earning less than his or her weekly benefit amount.

10

Under the above statutory scheme, the presence or absence of part-time work may affect the amount of benefits payable to a claimant, but it does not affect the claimant's eligibility to receive benefits. In short, part-time work is optional. Since a claimant can receive benefits regardless of whether he or she works part-time, it would make no sense to disqualify the claimant from any and all benefits upon the cessation of part-time work. See *Tomlin v. Unemployment Ins. Appeals Bd.*, 82 Cal. App. 3d 642, 647-48, 147 Cal. Rptr. 403 (1978); *Sticka v. Holiday Village South*, 348 N.W.2d 761, 763 (Minn. 1984). This is particularly true where the part-time work would likely not be considered "suitable work" for the claimant and he or she could decline such work without jeopardizing his or her qualification for benefits. See K.S.A. 2013 Supp. 44-706(c) (claimant is disqualified for benefits if he or she fails without good cause to accept suitable work when offered); *Sticka*, 348 N.W.2d at 763 n. 1.

The Board's interpretation would also create a disincentive for unemployed individuals to accept part-time work while continuing to seek full-time work. The claimant could refuse part-time work and continue to receive full benefits. But if the claimant accepted part-time work and later voluntarily left that work, he or she would risk losing any and all benefits. The legislature cannot have intended such an unreasonable result. See *Emerson v. Director of the Division of Employment Security*, 393 Mass. 351, 353, 471 N.E.2d 97 (1984) (stating that such effect is "to reward the idle and punish the ambitious").

We reject the Board's interpretation of K.S.A. 2013 Supp. 44-706(a), which would disqualify a claimant who voluntarily leaves one job from all unemployment compensation benefits, even those benefits related to the loss of a job for which the claimant would otherwise be eligible to receive benefits. This interpretation is contrary to the explicitly stated public policy underlying the KESL and inconsistent with the overall statutory scheme of the KESL. Furthermore, the overwhelming majority of courts of

11

other jurisdictions have for similar reasons rejected such a construction when interpreting their own analogous statutes. See, *e.g.*, *Tomlin*, 82 Cal. App. 3d at 649; *Rodgers v. Dep't of Employment Security*, 186 Ill. App. 3d 194, 200-01, 542 N.E.2d 168 (1989); *McCarthy*, 247 Iowa at 764; *Emerson*, 393 Mass. at 352-53; *Sticka*, 348 N.W.2d at 763; *Baker v. Midway Enterprises, Inc.*, 78 S.W.3d 188, 193-94 (Mo. App. 2002); *Gilbert*, 214 Neb. at 685; *Goodman v. Board of Review*, 245 N.J. Super. 551, 558-59, 586 A.2d 313 (1991);

We do note *Delhomme v. Florida Unemployment Appeals Com'n*, 88 So. 3d 205, 207-08 (Fla. Dist. App. 2011), where legislative history indicated an intent to totally disqualify from all benefits any individual who was laid off from a full-time job and then voluntarily quit a part-time job.

The more reasonable interpretation of K.S.A. 2013 Supp. 44-706(a) is that a claimant who voluntarily leaves a job without good cause attributable to the work or the employer is only thereby disqualified from benefits related to the job he or she voluntarily left; the claimant is not thereby disqualified from benefits he or she might otherwise be eligible to receive related to other jobs. Each job should be considered separately and benefits disqualified separately according to the facts related to the termination of each job. This interpretation is consistent with the public policy purposes and overall statutory scheme of the KESL. Moreover, this interpretation appears workable in light of the KDOL's system of separately charging each employer for benefits paid to a claimant depending upon the proportion of the claimant's wages from each employer. See K.S.A. 2013 Supp. 44-710(c)(1), K.S.A. 2013 Supp. 44-710(e)(3). See also *Gilbert*, 214 Neb. at 684-85 (interpreting voluntary departure disqualification to apply separately to each job was reasonable in light of statutory mechanism for separately crediting and charging the accounts of different employers).

Here, there is no dispute that Johnson was eligible for and began receiving benefits following his separation from his computer programming position with the State. His later voluntary departure from his part-time position at McDonald's did not thereby disqualify him from benefits related to the loss of his job with the State. The Board erroneously interpreted and applied the voluntary departure disqualification of K.S.A. 2013 Supp. 44-706(a), and therefore the district court properly granted relief to Johnson.

Affirmed.

* * *

Bruns, J., concurring:  I concur in the majority's interpretation of K.S.A. 2013 Supp. 44-706(a) because it is consistent with the public policy expressed by the Kansas Legislature in K.S.A. 2013 Supp. 44-702. But I do not believe it is necessary to find the language of the statute to be ambiguous to reach this conclusion. I also agree that Johnson should not be disqualified from receiving unemployment compensation based on the unique circumstances presented in this action. It is important to recognize, however, that the question of whether a person has voluntarily left work without good cause is normally one of fact to be determined on a case-by-case basis.