NOT DESIGNATED FOR PUBLICATION

No. 115,898

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TAMMY LEE WILLOUGHBY,
*Appellant*,

v.

GOODYEAR TIRE AND RUBBER,
and
LIBERTY MUTUAL INSURANCE, CO.,
*Appellees*.


MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed February 17, 2017. Reversed and remanded with directions.

*Bruce Alan Brumley*, of Topeka, for appellant.

*Timothy A. Shultz*, and *Alison J. St. Clair*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellees.

Before HILL, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*: Tammy Willoughby, an employee of Goodyear Tire and Rubber (Goodyear), injured her right knee in the course of her employment on August 14, 2013. This was the third time she had experienced a work-related injury to her right knee while employed by Goodyear. Her two previous workers compensation claims were each settled for a rating of 10% partial permanent impairment. There was no settlement of this third claim. The Division of Workers Compensation determined that Willoughby suffered a 10% loss of use of her right leg and ordered corresponding compensation. Goodyear

1

appealed to the Kansas Workers Compensation Board (Board), which ultimately determined that Willoughby had actually suffered a 20% right lower extremity functional impairment. In its deliberations, the Board *sua sponte* interpreted the American Medical Association Guidelines (Guidelines) to combine Willoughby's two prior 10% awards into a 19% preexisting impairment rating, and pursuant to K.S.A. 2015 Supp. 44-501(e)(2)(A) then reduced Willoughby's award to $0. Willoughby appealed. We reverse and remand with directions.

FACTUAL AND PROCEDURAL BACKGROUND

Willoughby, an employee of Goodyear, injured her right knee in the course of her employment on August 14, 2013. She was diagnosed with a tear to the right medial meniscus and underwent corrective surgery and rehabilitation. She filed a claim for workers compensation. Goodyear disputed the nature and extent of Willoughby's injury and denied that any impairment occurred. Willoughby and Goodyear were not able to come to a settlement in the case. After reviewing testimony, on December 7, 2015, the administrative law judge (ALJ) determined that Willoughby suffered a 10% loss of use of the right leg and ordered a corresponding monetary and medical treatment award.

The August 2013 incident marked the third time Willoughby had experienced a work-related injury to her right knee while employed by Goodyear: her two previous injuries were in 2010 and 2011, and both required corrective surgery. Willoughby's workers compensation claims from the 2010 and the 2011 injuries were each settled for a rating of 10% partial permanent impairment.

Goodyear appealed the ALJ's December 2015 award of 10% for Willoughby's August 2013 right knee injury to the Board. After considering the record used by the ALJ, the Board ultimately determined that Willoughby had actually suffered a 20% right lower extremity functional impairment. In its deliberations, the Board then *sua sponte*

2

interpreted the Guidelines to combine Willoughby's prior 2010 and 2011 10% settlements into a 19% preexisting impairment rating. Then, pursuant to K.S.A. 2015 Supp. 44-501(e)(2)(A), the Board reduced Willoughby's award to $0. Willoughby's impairment rating was increased by the Board from the ALJ's 10% rating to a 20% rating, but then reduced to a noncompensable level by the Board's interpretation of the Guidelines and subsequent application of a statutory reduction. Willoughby appealed.

ANALYSIS

The Kansas Judicial Review Act defines the scope of judicial review of state agency actions unless the agency is specifically exempted from application of the statute. K.S.A. 2015 Supp. 77-603(a); *Ryser v. State*, 295 Kan. 452, 458, 284 P.3d 337 (2012). An appellate court exercises the same limited review of the agency's action as does the district court—as if the appeal had been made directly from the agency's action. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010); *Johnson v. Kansas Employment Security Bd. of Review*, 50 Kan. App. 2d 606, 610, 330 P.3d 1128 (2014), *rev. denied* 302 Kan. 1010 (2015).

THE BOARD VIOLATED PROVISIONS OF K.S.A. 2015 SUPP. 77-621(c)

A court reviewing an administrative action shall grant relief only if it determines that the agency violated one or more of the provisions of K.S.A. 2015 Supp. 77-621(c). Willoughby explicitly seeks review under K.S.A. 2015 Supp. 77-621(c)(4), which provides relief in the event the Board erroneously interpreted or applied the law. Throughout her appeal brief, Willoughby also impliedly argues that the Board violated other provisions of K.S.A. 2015 Supp. 77-621(c), in that the Board acted beyond its jurisdiction conferred by any provision of law; that the Board engaged in an unlawful procedure or failed to follow prescribed procedure; that the Board did base its decision upon facts or information not supported by the appropriate standard of proof by evidence

3

that is substantial in light of the record as a whole; and that the Board's action was unreasonable, arbitrary, or capricious.

On appeal, the burden of proving the invalidity of the agency action rests with the party asserting such invalidity. K.S.A. 2015 Supp. 77-621(a)(1); *In re Equalization Appeal of Wagner*, 304 Kan. 587, 597, 372 P.3d 1226 (2016) (tax appeal); *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014) (Kansas Insurance Department agency decision). Here, the burden of proving the Board violated provisions of K.S.A. 2015 Supp. 77-621(c) rests with Willoughby. Willoughby has met her burden.

*The Board Exceeded Its Authority and Misapplied the Law*

Willoughby argues that the Board exceeded its statutory authority when it combined her two prior settlements of 10% each into a composite 19% preexisting impairment rating and then used that 19% preexisting impairment rating to reduce her current 20% impairment rating to a noncompensable level. If an issue turns on an interpretation of a statute, the court reviews de novo without deference to the decision of the Board. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015); *Powell*, 290 Kan. at 567.

Under K.S.A. 2015 Supp. 44-501(e), the reduction of disability compensation is required by the amount of impairment determined to be preexisting:

> "Where workers compensation benefits have previously been awarded through *settlement* or judicial or administrative determination in Kansas, *the percentage basis of the prior settlement or award shall conclusively establish the amount of functional impairment determined to be preexisting*. Where workers compensation benefits have not previously been awarded through settlement or judicial or administrative determination in Kansas, the amount of preexisting functional impairment shall be established by competent evidence." (Emphasis added.)

4

Willoughby's settlements for her previous injuries were conclusively established by the earlier settlement awards of 10%:  once in 2010 and again in 2011. Willoughby's award was to be reduced by the current dollar value attributable under the Workers Compensation Act to the percentage of functional impairment determined to be preexisting. K.S.A. 2015 Supp. 44-501(e)(2)(A).

At the core of this appeal is the percentage of functional impairment that was determined to be preexisting for the purpose of reducing Willoughby's award. If the combination of the two previous settlements of 10% each was proper and does equate to 19%, as the Board determined, then Willoughby's 20% impairment award equates to $0. If, however, the functional impairment determined to be preexisting is established by the prior settlement, then Willoughby's prior settlement of 10% is the basis for the preexisting impairment reduction from her current impairment rating of 20%. This would leave Willoughby at a compensable level of 10% for her new permanent partial impairment.

*A Plain Reading of the Statute Is Required*

Willoughby argues for a plain reading of K.S.A. 2015 Supp. 44-501(e). Under that statute, "the percentage basis of the prior settlement or award *shall* conclusively establish the amount of functional impairment determined to be preexisting." (Emphasis added.) K.S.A. 2015 Supp. 44-501(e)(1). It is a fundamental rule of statutory construction that the intent of the legislature governs if that intent can be ascertained. *Hoesli*, 303 Kan. at 362. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery*, 304 Kan. at 409; *Hoesli*, 303 Kan. at 362. The meaning of

K.S.A. 2015 Supp. 44-501(e) is perfectly clear. Willoughby's preexisting functional impairment was conclusively established by the prior proceedings. There was no need or legal basis for the Board to go beyond that determination.

The parties extensively argue the Board's utilization of a hypothetical that questioned the plain meaning of K.S.A. 2015 Supp. 44-501(e). The Board engaged in this hypothetical to demonstrate that a plain reading of the statute could leave Willoughby injuring her knee on five separate occasions, settling each claim for 10%, and then only ever having to suffer a 10% reduction in her subsequent impairment ratings. This is a speculative hypothetical. The courts must construe statutes to avoid unreasonable or absurd results and presume that the legislature does not intend to enact meaningless legislation. *Milano's Inc. v. Kansas Dept. of Labor*, 296 Kan. 497, 501, 293 P.3d 707 (2013).

The Board's reasoning around its hypothetical is flawed for a number of reasons: (1) Board failed to justify departing from the ordinary and unambiguous language of the statute ("shall conclusively establish" the preexisting impairment); (2) Board failed to recognize that an approved settlement is a final action in a separate claim that should not be functionally relitigated years later; and (3) Board failed to consider the opposite effect of its hypothetical (*e.g.*, that five injuries with ever-increasing *sua sponte* Board-combined impairment rate reductions could lead to the unreasonable and absurd conclusion that Willoughby's knee had a less than zero impairment, in other words suggesting that her knee was completely healthy). There may have been an argument to be made in the previous proceedings that Willoughby's functional impairment should have been calculated at 20%. That argument was never made and a conclusive determination of 10% was made.

Additionally, Goodyear (appropriately) relied on the plain language of the statute to avoid having to put forward any evidence regarding Willoughby's previous impairment

ratings. Goodyear acknowledged throughout its brief that "the percentage basis of preexisting impairment is conclusively established by previous settlement [10%]." Likewise, the Board acknowledged that the statute conclusively established the amount of functional impairment determined to be preexisting and, thus, did not require that Goodyear demonstrate the level of Willoughby's preexisting impairment.

The Board cannot have it both ways. Since a plain reading of the statute does not require that Goodyear establish Willoughby's preexisting impairment rating, then that rating conclusively established by the previous settlement must be recognized for all purposes. As Goodyear proffered no evidence to dispute that previous settlement or to establish that it should have been something different than 10%, a plain reading of the statute dictates that the appropriate impairment rating for Willoughby's preexisting condition is 10% for the further application of the statute's clause regarding the award reduction.

*There Is No Competent, Substantial Evidence to Support a Preexisting Rating of 19%*

Willoughby argues that it was improper for the Board to use the Guidelines to combine her 2010 and 2011 settlements into one impairment rating to establish her preexisting impairment for the purpose of reducing her award. While Willoughby does not explicitly acknowledge the Board's action as taking judicial or administrative notice *sua sponte* of the Guidelines, in fact, that is what the Board did.

Judicial notice may be taken without request by a party of "specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." K.S.A. 60-409(b)(4). In this case, although referenced by several of the experts called upon to opine regarding Willoughby's injuries and impairment ratings, neither party requested that the

ALJ or Board take judicial notice of the Guidelines and no such determination was made. Consequently, the Guidelines are not a part of the record.

Prior to taking judicial notice of information, a judge shall afford each party a reasonable opportunity to present any information relevant to the propriety of taking judicial notice. K.S.A. 60-410(a). In this case, neither party was given notice that the Board planned to utilize the Guidelines outside of acknowledging the expert testimony that referenced those Guidelines. Neither party was given an opportunity to present information relevant to the propriety of the Board taking judicial notice of those Guidelines. It was not until the Board's order was complete that the parties were aware that the Board planned to incorporate the Guidelines and its interpretation of them into its analysis. While the Guidelines could arguably fit into the category of information envisioned by K.S.A. 60-409(b)(4), the record is silent as to whether they do, in fact, meet that standard. Nevertheless, the Board referenced the Guidelines in its order, and the Board's interpretation of those Guidelines was the ultimate determining factor in this case. Not only did the Board *sua sponte* take judicial notice of the Guidelines, it interpreted them in its analysis of the case in a manner that was dispositive. Neither the Guidelines nor the Board's interpretation of them amount to substantial evidence.

Substantial evidence refers to evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue raised could be easily resolved. *Ward v. Allen County Hospital,* 50 Kan. App. 2d 280, 285, 324 P.3d 1122 (2014). The 19% functional impairment determination was not a factual finding based on evidence. It was a determination the Board came to as part of its reliance on information that is not in the record. This is not substantial competent evidence.

*Conclusion*

The Board failed to follow the provisions of K.S.A. 2015 Supp. 77-621(c). It acted beyond its authority in creating a combined preexisting impairment rating for Willoughby's right knee. It used that improper rating to erroneously interpret and apply K.S.A. 2015 Supp. 44-501(e)(2)(A). When it failed to follow the clear meaning of the K.S.A. 2015 Supp. 44-501(e)(1), the Board failed to follow prescribed procedures regarding the application of statutes. It failed to follow proper procedures for admission of evidence and taking judicial notice of evidence. The Board based its decision upon information not part of the record. See K.S.A. 2015 Supp. 77-621(c)(2), (4), (5), and (7). The Board's order regarding the statutory reduction is reversed, and the case is remanded with instructions to apply only the 2011 10% preexisting impairment rating to the reduction of Willoughby's 20% current impairment rating in accordance with K.S.A. 2015 Supp. 44-501(e)(2)(A).

Reversed and remanded with directions.