NOT DESIGNATED FOR PUBLICATION

No. 117,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THOMAS PROSE, MD,
*Appellant*,

v.

KANSAS STATE BOARD OF HEALING ARTS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANKLIN R. THEIS, judge. Opinion filed January 12, 2018. Affirmed.

*Megan L. Moseley* and *Carol Ruth Bonebrake*, of Simpson, Logback, Lynch, Norris, PA., of Topeka, for appellant.

*Kelli J. Stevens*, of Kansas State Board of Healing Arts, for appellee.


Before GREEN, P.J., BUSER and LEBEN, JJ.


BUSER, J.: Dr. Thomas M. Prose, a medical professional licensed in Kansas, and sole owner of General Medicine, P.C., appeals the suspension of his medical license by the Kansas State Board of Healing Arts (Board) after the Board determined he gave false answers on his 2009 and 2010 medical license renewal forms. Specifically, the Board found Dr. Prose was personally subject to an integrity agreement between the Office of Inspector General of the United States Department of Health and Human Services (OIG) and General Medicine and, thus, had a statutory duty to report the integrity agreement on his annual renewal forms. On appeal, Dr. Prose contends (1) he was not personally

1

subject to the integrity agreement between the OIG and General Medicine; (2) the Board erroneously interpreted or applied the law to Dr. Prose individually; and (3) the Board's sanctions against him are unreasonable, arbitrary, or capricious. Finding no error, we affirm the Board's decisions.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Prose is the president, senior medical director, corporate executive director, and sole owner of General Medicine, P.C., a post-hospitalist corporation he founded in 1984. General Medicine was initially organized in Michigan and subsequently incorporated in Kansas as General Medicine of Kansas in 2012. Dr. Prose himself has been licensed to practice medicine and surgery in Kansas since 2003.

"[S]ometime around 2006, 2007," Dr. Prose "became aware of [an] investigation" by the OIG into the billing practices of General Medicine. This investigation resulted in an integrity agreement between the OIG, General Medicine, and Dr. Prose. Dr. Prose signed this integrity agreement on behalf of himself and on behalf of General Medicine. The integrity agreement went into effect on September 9, 2009, and required reformation of Dr. Prose and General Medicine's billing practices and a five-year monitoring requirement. Additionally, General Medicine and Dr. Prose signed a settlement agreement wherein the United States was to be paid $1,100,000. Both documents resolved allegations that the United States had certain civil claims against General Medicine and Dr. Prose for billing Medicare for medical services performed by nurse practitioners and clinical nurse specialists as though those services were performed by a physician.

From June 2009 through June 2013, Dr. Prose submitted online applications for the annual renewal of his Kansas medical license. On each of these applications, Dr. Prose indicated "no" in response to the following queries:

2

"C. In the past 12 months has any disciplinary action been initiated or taken against you by a state licensing agency or other state or government agency, or have you surrendered or consented to limitation of license to practice in any state or country?"

. . . .

"G. In the past 12 months do you know of any investigation by or any allegations, complaints, or charges concerning you made to any licensing agency or state or government agency?"

In 2013, a whistleblower filed a report alleging that General Medicine of Kansas had failed to comply with the integrity agreement. After learning of this report, the Board initiated an investigation of General Medicine and Dr. Prose. Thereafter, on July 17, 2014, the Board filed a petition against Dr. Prose in which the Board alleged that the physician knowingly gave incorrect answers on his license renewal applications from 2009 through 2013. The petition consisted of three separate counts against Dr. Prose.

Count I of the Board's petition related to the responses Dr. Prose gave on his 2009 renewal application. This count alleged violations of:

- K.S.A. 65-2836(a):  Fraud or misrepresentation in applying for, or in securing, an original, renewal, or reinstated license by failing to disclose the OIG investigation upon submission of his 2009 Renewal Application with the State of Kansas.

- K.S.A. 65-2836(b):  Unprofessional or dishonorable conduct by failing to notify the Board that the OIG initiated an investigation regarding his billing practices as required by the 2009 Renewal Application.

- K.S.A. 65-2836(b) and K.S.A. 65-2837(b)(12): Conduct likely to deceive, defraud, or harm the public by failing to disclose the OIG's investigation on his 2009 Renewal Application.

- K.S.A. 65-2839(a)(f): Willful or repeated violations of the Kansas Healing Arts Act by intentionally failing to disclose the OIG investigation as legally requested on the Board's 2009 Renewal Application form.

- K.S.A. 65-2836(r): Failing to furnish the Board, or its investigators or representatives, any information legally requested by the Board by declining to disclose the OIG investigation on the 2009 Renewal Application form.

Count II of the Board's petition related to the responses Dr. Prose gave on his 2010 renewal application. In addition to the violations listed above, the petition also alleged violations of:

- K.S.A. 65-2836(s): To have sanctions or discipline taken against a licensee for acts or conduct similar to acts or conduct that would constitute grounds for disciplinary action under K.S.A. 65-2836 et seq.

- K.S.A. 65-2836(t): Failure to report adverse action to the Board taken against a licensee by a governmental agency for acts or conduct similar to acts or conduct that would constitute grounds for disciplinary action under K.S.A. 65-2836 et seq.

Count III of the Board's petition alleged that Dr. Prose committed similar violations in his renewal applications from 2011 through 2013.

4

Administrative Law Judge Sandra L. Sharon presided over a formal hearing on this matter and issued an initial order on October 1, 2015. Regarding Count I, Judge Sharon found Dr. Prose had violated K.S.A. 65-2836(a), (b), and (r). For Count II, Judge Sharon found Dr. Prose had violated K.S.A. 65-2836(a), (b), (f), (r), (s), and (t). Count III was dismissed and is not at issue in this appeal.

On October 19, 2015, Dr. Prose filed a petition for review of the administrative law judge's initial order with the Board. After reviewing the evidence, the Board affirmed Judge Sharon's findings, but it ruled Dr. Prose had not violated K.S.A. 65-2836(b) in his 2009 and 2010 renewal applications. The Board suspended Dr. Prose's medical license for 30 days and ordered payment of a $2,499 fine and $6,464.35 in costs.

Dr. Prose filed a petition for judicial review of the Board's final order with the District Court of Shawnee County. After a hearing, the district court issued a written memorandum affirming the Board's decision. Dr. Prose timely appealed.

### THE BOARD DID NOT ERR IN RULING THAT DR. PROSE WAS PERSONALLY SUBJECT TO THE INTEGRITY AGREEMENT

On appeal, Dr. Prose contends the decision of the Board is not supported by substantial evidence when viewed in light of the record as a whole. Specifically, Dr. Prose argues that the Board presented no evidence to show that he personally was subject to the integrity agreement with the OIG. The Board counters that the plain language of the integrity agreement "clearly reflects Dr. Prose was an independent party bound by [its] terms."

"Judicial review and civil enforcement of any agency action . . . shall be in accordance with the Kansas judicial review act [KJRA]." K.S.A. 2016 Supp. 65-2851a(b); see *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 458, 284 P.3d 337

5

(2012) (holding final orders of the Board of Healing Arts are subject to review under the [KJRA]). When reviewing a district court's decision on judicial review, this court exercises the same statutorily limited review of the agency's action as the district court, as though the appeal had been made directly to the appellate court. *Johnson v. Kansas Employment Security Bd. of Review*, 50 Kan. App. 2d 606, 610, 330 P.3d 1128 (2014), *rev. denied* 302 Kan. 1010 (2015). On appeal, the burden of proving the invalidity of the agency action rests with the party asserting such invalidity. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 953, 335 P.3d 1178 (2014).

In support of this first issue, Dr. Prose relies on K.S.A. 2016 Supp. 77-621(c)(7), which provides that a ruling court shall grant relief if

> "the agency action is based on a determination of fact, made or implied by the agency, that is *not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole*, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." (Emphasis added.)

K.S.A. 2016 Supp. 77-621(d) defines "evidence in light of the record as a whole" as the evidence both supporting and detracting from an agency's findings. *Sierra Club v. Moser*, 298 Kan. 22, 62-63, 310 P.3d 360 (2013). When reviewing the evidence in light of the record as a whole, courts "shall not reweigh the evidence or engage in de novo review." K.S.A. 2016 Supp. 77-621(d).

The crux of Dr. Prose's argument focuses on his claim that he was *not* individually subject to the provisions of the integrity agreement. Yet, the integrity agreement consistently mentions both Dr. Prose, individually, and General Medicine.

6

Notably, the preamble reads:

"Thomas Prose (Prose) and General Medicine, P.C. (General Medicine) hereby enter into this Integrity Agreement (IA) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services . . . . This IA applies to Prose, General Medicine, any entity in which Prose has an ownership or control interest at any time during the term of the IA . . . . Contemporaneously with this IA, Prose and General Medicine are entering into a Settlement Agreement with the United States."

Dr. Prose, individually, and General Medicine are referenced separately throughout the rest of the integrity agreement. And, on the signature page of the integrity agreement, Dr. Prose signed "On Behalf of Thomas Prose" as well as "On Behalf of General Medicine, P.C."

In his initial hearing before Judge Sharon, Dr. Prose argued that, notwithstanding the above evidence, the integrity agreement did not apply to him as an individual. In rejecting this argument, Judge Sharon reasoned:

"[The integrity agreement] does not address Thomas Prose **as** President of General Medicine. The language is clear. It says 'and'. 'And' is a conjunction used to join two separate items. In this case, it means Thomas Prose and General Medicine. . . . It does not mean one or the other. The agreement is signed by Thomas Prose on behalf of Thomas Prose and by Thomas Prose on behalf of General Medicine, P.C. Thomas Prose is clearly an independent party to the contract."

The district court adopted a similar rationale in its findings:

"[I]t simply cannot be argued successfully that the investigation of General Medicine's practices, or the resulting 'Integrity Agreement,' did not involve and bind [Dr. Prose] personally. Clearly, the documents concluding the federal probe evidence that the agreements applied to both the corporate entity and the individual—Dr. Prose—who

7

controlled it and were separately signed by Dr. Prose in each capacity. Dr. Prose's assertions to the contrary therefore belie the documents and also belie commonsense."

On appeal, Dr. Prose argues "it is clear that the OIG Investigation was solely related to General Medicine—Dr. Prose was never an *individual* subject of the same." He explains that he signed the integrity agreement individually and as a representative of General Medicine because doing so "is a standard (and required) practice."

We agree with the Board that integrity agreements are contracts and if the terms of a contract are clear, the intent of the parties should be determined from the language of the contract. We will, therefore, review this integrity agreement as we would consider any contract.

Appellate courts exercise unlimited review over the interpretation and legal effect of written instruments and they are not bound by a lower court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014). "'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013). The interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. "'The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.' [Citations omitted.]" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

Here, the language of the integrity agreement plainly states that it applied not just to General Medicine, but to Dr. Prose as well. Dr. Prose and General Medicine are

8

referenced separately over 200 times throughout the document. Dr. Prose also signed the agreement on behalf of General Medicine *and* on behalf of himself. In his appellate brief, Dr. Prose endeavors to explain this wording, stating it is "a standard (and required) practice." Dr. Prose does not, however, support his "standard practice" argument with any authority and, thus, we deem this particular point without support. Given that the integrity agreement applied to both General Medicine and Dr. Prose, individually, it is apparent that Dr. Prose was required to separately execute the agreement on behalf of the corporation and on his own behalf.

We conclude that Judge Sharon, the Board, and the district court did not err in their determination that Dr. Prose was individually subject to the integrity agreement in this case. As a result, because Dr. Prose failed to disclose the OIG's investigation and subsequent integrity agreement on his 2009 and 2010 license renewal forms, there was substantial competent evidence when viewed in light of the record as a whole that he violated K.S.A. 2016 Supp. 65-2836.

THE BOARD DID NOT ERRONEOUSLY INTERPRET OR APPLY THE LAW

In an argument that is closely related to the first issue, Dr. Prose contends that because the OIG investigation and integrity agreement were only related to General Medicine and not Dr. Prose, individually, the Board and district court erred in their interpretation and application of law by finding that Dr. Prose individually violated the various provisions of K.S.A. 2016 Supp. 65-2836. Reprising his earlier argument, Dr. Prose asserts that he was never personally investigated, sanctioned, or disciplined by the OIG and that, as a result, he did not violate his responsibilities under K.S.A. 2016 Supp. 65-2836.

As discussed in the first issue, the plain language of the integrity agreement clearly states that both Dr. Prose, individually, and General Medicine were subjects of the OIG

9

investigation, sanctions, and settlement, thus triggering Dr. Prose's responsibilities to comply with K.S.A. 2016 Supp. 65-2836, including responding truthfully to questions posed in his renewal applications. There is no need to repeat our discussion regarding the first issue wherein Dr. Prose also raised this argument. On this basis, we find no erroneous interpretation or application of law in the Board's decision holding that Dr. Prose was individually accountable for complying with the various provisions of K.S.A. 2016 Supp. 65-2836.

Dr. Prose also asserts that Judge Sharon's inaccurate citation of K.S.A. 2016 Supp. 65-2836(s) constituted a material error and that "[a]ny disciplinary findings related to K.S.A. [2016 Supp.] 65-2836(s) must be rescinded."

As previously noted, Count II of the Board's petition against Dr. Prose alleged several violations of K.S.A. 2016 Supp. 65-2836, including subsections (s) and (t). The specific allegations read:

"f.     Pursuant to K.S.A. 65-2836(s), Licensee had sanctions or disciplinary actions taken against him by a governmental agency or department for acts or conduct similar to acts or conduct which would constitute grounds for disciplinary action under K.S.A. 65-2836 *et. seq.* Licensee's Integrity Agreement with OIG constitutes sanctions or disciplinary action taken against him by a government agency for conduct (ie. improper and/or fraudulent billing), which would constitute grounds for disciplinary action under the Kansas Healing Arts Act.

"g.     Pursuant to K.S.A. 65-2836(t), Licensee failed to report to the Board any adverse action taken against him by a governmental agency for acts or conduct similar to acts or conduct which would constitute grounds for disciplinary action under K.S.A. 65-2836 *et. seq.* Licensee failed to report the Integrity Agreement with OIG he signed to resolve multiple issues regarding billing practices, which would constitute grounds for disciplinary action under the Kansas Healing Arts Act for approximately five (5) years."

10

This language from the Board's petition is consistent with the language of K.S.A. 2016 Supp. 65-2836, which provides:

"A licensee's license may be revoked, suspended or limited, or the licensee may be publicly censured or placed under probationary conditions, or an application for a license or for reinstatement of a license may be denied upon a finding of the existence of any of the following grounds:

. . . .

"(s) Sanctions or disciplinary actions have been taken against the licensee by a peer review committee, health care facility, a governmental agency or department or a professional association or society for acts or conduct similar to acts or conduct which would constitute grounds for disciplinary action under this section.

"(t) The licensee has failed to report to the board any adverse action taken against the licensee by another state or licensing jurisdiction, a peer review body, a health care facility, a professional association or society, a governmental agency, by a law enforcement agency or a court for acts or conduct similar to acts or conduct which would constitute grounds for disciplinary action under this section."

In her initial order, Judge Sharon found Dr. Prose had violated subsections (s) and (t). However, the judge's findings incorrectly quoted subsection (s) and instead stated: "(s) by failing to report sanctions or discipline taken against [Dr. Prose] by a governmental agency, OIG." The Board adopted Judge Sharon's findings, but did not correct this mistake. Before the district court, Dr. Prose argued this error was not harmless because it "changed the nature of the findings against [him]." The district court rejected this argument, concluding:

"Here, the charging document initiated by the Board's disciplinary counsel . . . made an allegation under its Count II that Dr. Prose violated each of K.S.A. 65-2836(s) and (t). The *Petition* properly articulated the terms of each statute, so it could not be said that notice was lacking or that the allegations were improperly set forth or jurisdictionally defective. K.S.A. 65-2836(s) requires only a finding that 'sanctions or disciplinary action has been taken against a licensee by . . . a governmental agency, . . . which would

11

constitute grounds for disciplinary action under this section.' It is K.S.A. 65-2836(t), not K.S.A. 65-2836(s), that requires the reporting. A finding under K.S.A. 65-2836(s) requires nothing from the accused, only a finding by the Board that such an event described occurred, which then provokes its authority.

"It is clear that the Integrity Agreement entered into by Dr. Prose constitutes a sanction or disciplinary action, which is a necessary finding under both K.S.A. 65-2836(s) or (t), hence that prong of each is met; however, K.S.A. 65-2836(s) empowers the Board to consider discipline in Kansas merely on that finding alone. The fact the hearing officer went beyond that mere finding of the existence of a sanction or discipline as represented by the Integrity Agreement and found such sanction was not reported by Dr. Prose is but misplaced surplusage to the finding required by K.S.A. 65-2836(s). Accordingly, mis-articulation of the finding as including more than needed to sustain it constitutes a harmless error, at best."

Under the KJRA, "due account shall be taken by the court of the rule of harmless error." K.S.A. 2016 Supp. 77-621(e). An error is harmless if it does not affect the parties' substantial rights. See *Kansas City Mall Assocs. v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 1, 8, 272 P.3d 600 (2012). Black's Law Dictionary defines "substantial right" as: "An essential right that potentially affects the outcome of a lawsuit and is capable of legal enforcement and protection, as distinguished from a mere technical or procedural right." Black's Law Dictionary 1520 (10th ed. 2014).

On appeal, Dr. Prose reprises the arguments he made before the district court. He asserts that any error by Judge Sharon or the Board was "far from harmless, as a properly-cited K.S.A. 65-2836(s) is linked to the existence of a disciplinary action, not the alleged failure to report the same . . . [and] the improper citation from the *Initial Order* . . . changed the nature of the findings against [him]." Dr. Prose extends his argument further, stating, "there are no findings that provide any grounds for [Judge Sharon] or [the Board] to have held that the underlying OIG investigation fell within the scope of K.S.A. 65-2836(s)," and concludes "it is far more than harmless error [for a court to] adopt a new legal theory against [him]."

12

Dr. Prose's argument incorrectly presumes he was not personally subject to the integrity agreement. As already discussed, the language of that document makes clear it applied to both General Medicine and Dr. Prose individually. This fact alone—as the district court found—satisfied K.S.A. 2016 Supp. 65-2836(s). Indeed, the very nature of K.S.A. 2016 Supp. 65-2836(t) *requires* that subsection (s) be satisfied. The mis-citation of subsection (s) was harmless because a violation of subsection (t) required all the elements of subsection (s), plus *additional* elements (namely, a failure to report the investigation or discipline to the Board). The district court correctly concluded that any error was harmless.

THE BOARD'S SANCTIONS ARE NOT UNREASONABLE

Finally, Dr. Prose alleges the Board's findings and sanctions "imposed a disproportionate penalty upon [him] and failed to consider applicable mitigating factors."

In support of this issue, Dr. Prose relies on K.S.A 2016 Supp. 77-621(c)(8), which allows our court to grant relief from the Board's decision if "the agency action is otherwise unreasonable, arbitrary or capricious." The arbitrary and capricious test relates to whether a particular action should have been taken or is justified—such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact. *Kansas Dept. Revenue v. Powell*, 290 Kan. 564, 569, 232 P.3d 856 (2010). A rebuttable presumption of validity attaches to all actions of an administrative agency, and the burden of proving arbitrary and capricious conduct lies with the party challenging the agency's actions. See *Moser*, 298 Kan. at 47.

Dr. Prose is the president, corporate executive director, senior medical director, and sole owner of General Medicine. In the prior proceedings, Dr. Prose speculated that, of the approximately 200 physicians and other staff employed by General Medicine

13

nationwide, about 10 worked in Kansas. Due to the corporate structure of General Medicine of Kansas, Dr. Prose claims the Board's decision to suspend his license for 30 days "will essentially bring the operations of General Medicine of Kansas to a halt." The consequences of this cessation of medical services on the citizens of Kansas, Dr. Prose asserts, will be significant, especially in rural areas where 80 percent of General Medicine's facilities operate. Dr. Prose concludes that the "risk to the citizens of Kansas (attributable to the impending deprivation of care providers) is significantly outweighed by the non-existent harm to the citizens of Kansas because of [his] alleged under-disclosure."

The district court, however, rejected this argument, finding:

"Dr. Prose has failed to establish that the sanction of suspension was arbitrary, capricious or unreasonable and so wide of the mark of fair debate as to be unreasonable. To have done otherwise would be to sanction less harshly a licensee based on the greater size of his or her professional association or staff while a sole medical provider or smaller professional association, ones with lesser staff, could not make the same plea for a lesser sanction. The result of the sanction is a consequence of a choice of the form of practice, which is a choice made by the licensed provider. It should not excuse or insulate from sanction a fault of the licensee. The consequences of the sanction may be collaterally felt by others employed by him, but it also necessarily results from the choice of those who sought to work for that provider. It is reasonable that such a choice should not be allowed to be used as a shield for licensee misconduct. Consistency of outcome can reasonably be said to outrank the collateral consequences and would not be an arbitrary result as against the disparity otherwise created."

On appeal, the Board cites the district court's decision with approval and further notes Dr. Prose could avoid shuttering General Medicine of Kansas by "bring[ing] on another licensed shareholder and temporarily divest[ing] himself of General Medicine of Kansas, or otherwise chang[ing] the [corporate] structure." The Board also points out that

14

Dr. Prose's attorney acknowledged that Dr. Prose could feasibly change the corporate structure of General Medicine.

We agree with the Board. There is no indication that the Board's sanctions against Dr. Prose were unreasonable, arbitrary, or capricious. Dr. Prose has had ample time to prepare for these consequences—as the district court issued an order on January 26, 2016, staying all sanctions against Dr. Prose until judicial review was completed.

Moreover, the Board's decision is consistent with its sanctioning guidelines. These guidelines state that the "presumed sanction for [sanctions similar to Dr. Prose's] is a 30 to 89-day suspension and a $500 to $2,499 fine." Here, the Board imposed a 30-day license suspension and a $2,499 fine. Both sanctions fell within the presumptive range of the guidelines. As a result, there is no indication the sanctions imposed against Dr. Prose—or the collateral consequences of those sanctions—render the Board's decision arbitrary, capricious, or unreasonable.

Affirmed.

15