No. 45,928

KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., *Appellee*, v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS; DALE E. SAFFELS, Chairman; JULES V. DOTY and JOHN W. CUNNINGHAM [substituted for James O. Greenleaf], as Members of said Commission, and their Respective Successors in Office, *Appellants*,

and

KANEB PIPE LINE COMPANY, *Intervenor-Appellant.*

(473 P. 2d 27)

Opinion filed July 17, 1970.

*Sard Fleeker,* Assistant General Counsel, argued the cause, and *Jack Glaves,* General Counsel, was with him on the briefs for the appellants.

*J. Evans Attwell,* of Vinson, Elkins, Searls and Connally, of Houston, Texas, argued the cause, and *Lynn R. Coleman,* of Houston, Texas, *George P. Nellans,* of Norton, *Robert N. Partridge* and *Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, were with him on the briefs for the intervenor-appellant.

*John F. Jones, of* Anderson, Byrd, Richeson and Jones, of Ottawa, argued

the cause, and *Richard C. Byrd,* of the same firm, and *Lon H. Bayer* and *J. D. Conway,* both of Hastings, Nebraska, were with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by Kaneb Pipe Line Company and the State Corporation Commission from a district court's judgment setting aside an order of the commission certificating shares of common stock issued by Kaneb.

Kansas-Nebraska Natural Gas Company, Inc., appellee, was granted leave to intervene in proceedings before the commission. The commission denied an application for rehearing and Kansas-Nebraska appealed to the district court of Phillips County.

The material facts can be briefly stated. On November 17, 1967, Kaneb filed an application with the commission, pursuant to the provisions of K. S. A. 66-125, requesting the certification of some 20,566 shares of common stock which had been issued pursuant to two separate employee stock option plans. Kansas-Nebraska filed a petition to intervene, which was brought to the commission's attention at the commencement of the hearing on April 9, 1968. Kaneb objected to the intervention and the parties argued their respective positions before the commission. The commission staff counsel pointed out that under K. A. R. 82-1-213 (*i*) admission as an intervenor should not be construed as recognition by the commission that such intervenor might be aggrieved by any order of the commission in such proceeding. Kansas-Nebraska was allowed to intervene and the hearing was held.

At the hearing Kaneb offered in evidence its verified application which set forth the stock option plans approved by its shareholders and by its board of directors. Kaneb also submitted annual reports filed with the commission, which indicated the shares of stock which had been issued under the stock option plans.

Neither Kansas-Nebraska nor the commission offered evidence.

The commission's order was filed May 15, 1968. The commission made findings of fact and conclusions of law and granted a certificate covering 22,159 shares of common stock previously issued by Kaneb.

The commission ruled in essence that its authority under the provisions of K. S. A. 66-125 is to determine whether the issuance of the securities is necessary for statutory purposes, and upon ascer-

taining the truthfulness of the statements contained in the application and that the stock will be used for the purpose for which its issuance is required, it then becomes the mandatory duty of the commission to issue the certification applied for as provided in 66-125, *supra.*

The commission found that Kaneb had furnished all requisite and necessary information required by the provisions of 66-125, *supra,* and that the issuance and sale of stock was necessary and required for the purposes stated in the application.

Commissioner Greenleaf dissented on the ground the commission lacked power to retroactively certificate the stock.

Kansas-Nebraska filed an application for rehearing, primarily on the ground that the commission's order was unlawful because the stock was void under the terms of 66-125 and could not be retroactively validated.

As we have previously indicated, Kansas-Nebraska appealed to the district court after the application for rehearing was denied. Kaneb intervened in the district court proceeding.

The district court adopted the findings of fact made by the commission and then held as a matter of law that the commission had no authority to authorize or approve the issuance of the stock, after the same had been issued, because Kaneb had failed to secure prior approval of the stock under the provisions of 66-125.

Before proceeding further with this opinion it should be said that we have had no occasion to consider the merits of the controversy since we are of the opinion Kansas-Nebraska had no standing to seek judicial review of the commission's order.

The standing of Kansas-Nebraska was put in issue when the commission and Kaneb filed motions to dismiss in the district court on the ground that Kansas-Nebraska did not have standing to seek judicial review since it did not have the requisite "interest" nor was it an "aggrieved" party in the proceedings.

The district court did not expressly rule on the motions to dismiss, but during the proceedings commented:

". . . I don't know how the—these Kansas-Nebraska Natural Gas Company got into it other than from the record, but it appears the Corporation Commission permitted them to intervene in that case."

This comment is the only clue as to the view of the district court concerning the standing of Kansas-Nebraska. It appears the district

court refused to dismiss simply because the commission had permitted Kansas-Nebraska to intervene in the commission proceedings.

The record of proceedings before the commission discloses that, in support of its motion to intervene, Kansas-Nebraska argued that, since Kaneb had acquired twenty percent of the stock of Kansas-Nebraska with the avowed purpose of seeking a merger, it had a vital interest in the validity of Kaneb's stock which might be traded for Kansas-Nebraska stock in the event a merger was consummated. The commission made no findings or orders at this point in the proceedings, as to the status of Kansas-Nebraska. The only showing in the record indicating the position of the commission concerning the standing of Kansas-Nebraska is reflected in a colloquy between Commission Chairman, Saffels and staff counsel Johnson which is shown in the record as follows:

"CHAIRMAN SAFFELS: Mr. Johnson, do you have any comment?

"MR. JOHNSON: Mr. Chairman, of course, this is a matter of discretion with the Commission. I do feel that in this instance the matter is one of broad discretion. I agree with Mr. Partridge as to his citation of the rule to which he referred; however, I would call the Commission's attention to another rule with reference to intervention. That is Rule 82-1-213, which states in part: 'Admission as an intervenor shall not be construed as recognition by the Commission that such intervenor might be aggrieved by any order of the Commission in such proceeding.' I think that order is in keeping with the broad discretion the Commission has in this matter and I would just bring that particular rule to the Commission's attention."

The commission's Rule, K. A. R. 82-1-213 (*i*) defines "intervenors." The portion of the Rule pertinent to our question reads:

". . . Admission as an intervenor shall not be construed as recognition by the commission that such intervenor might be aggrieved by any order of the commission in such proceedings."

The purpose of the rule seems to be to afford a safeguard which enables the commission to pursue a commendable liberal policy in permitting participation by parties desiring to intervene in commission proceedings. It affords an intervening party an opportunity to show and the commission to hear evidence of any direct interest the party might have in the proceedings, that might be adversely affected by the commission's order without a precommitment by the commission with respect to standing.

We believe the rule serves a laudable purpose in protecting a party's right to show an interest without hindering orderly procedure in commission proceedings.

The rationale of the rule is not without supporting authority. In 2 Am. Jur. 2d., Administrative Law, § 576, this statement appears:

". . . Furthermore, the mere fact that a party was permitted to intervene in an administrative proceeding does not give him a standing to sue for relief in the courts, or to appeal under a statute granting each party to the proceeding a right to review; . . ." (p. 397.)

A discussion of the rule and cases in support thereof is found in 3 Davis, Administrative Law Treatise, Standing, § 22.08, p. 242.

In the instant case, as we have previously noted, the district court did not make an express finding as to the standing of Kansas-Nebraska. From the colloquy between the commission and its counsel and the subsequent filing of the motion to dismiss in the district court, the commission's position clearly appears to be that Kansas-Nebraska was not "aggrieved" by the commission's order.

Kansas-Nebraska submitted no evidence in the commission hearing. It stood only on the assertion that Kaneb owns twenty percent of its stock for the avowed purpose of effecting a merger. In its brief on appeal, Kansas-Nebraska repeats the assertion and argues that in case a merger is effected, which might result in a trading of stock, Kansas-Nebraska stockholders would suffer a disadvantage by reason of the additional stock and the possibility of a cloud on the validity of the Kaneb stock in question. In other words, Kansas-Nebraska depends only upon the possibility of inequities arising between respective stockholders of the two companies in case of a merger as a basis for its claim of standing in these proceedings.

We do not believe the hypothesis asserted by Kansas-Nebraska is sufficient to afford it standing under our statutes dealing with the subject.

Kaneb says that the term "interested" as used in the statute cannot be stretched to include the merely curious of those who by virtue of their general hostility to the applicant are interested in interfering with or harming its business. Kaneb contends the word "interested" in the context used in the statute means a party interested in the subject matter and one who has an "immediate and pecuniary" interest which would be "injuriously affected" or "aggrieved" by the commission's order.

Kaneb points out that Kansas-Nebraska is not a creditor, stockholder, debtor, customer, supplier or competitor of Kaneb and that there is no contractual relationship of any kind between the two companies.

Even if the possibility of a merger gives Kansas-Nebraska a position of interest in the proceeding, Kaneb points out and it is undisputed, that all merger proposals between the two companies had terminated by November 1967. Kaneb further says that the district court was aware of the termination of merger proposals because of other appeals to the same court by Kansas-Nebraska from commission orders in other proceedings.

In its annual report to shareholders for the year 1967, the chairman of the board and the president of Kaneb stated that Kaneb was still of the opinion that a merger of the two companies would benefit shareholders and consumers of both companies, but as of November 1967 there was no outstanding plan of merger.

As we have previously noted, the order of the commission was entered on May 15, 1968, and the application for review was presented to the district court on October 25, 1968. On that date the only actual connection between Kaneb and Kansas-Nebraska was the ownership by Kaneb of common stock in Kansas-Nebraska.

If prospects of a merger should again appear, shareholders of Kansas-Nebraska may protect themselves by negotiating on a basis of the adjusted shareholder equities in the two respective companies. If the additional stock of Kaneb should be used in some future merger attempt to the unlawful disadvantage of Kansas-Nebraska shareholders, they have access to the customary legal remedies of shareholders, rather than by resorting to intervention in commission proceedings which actually concern only internal affairs of Kaneb.

While we believe that in commission proceedings a liberal policy governing intervention should be followed; nevertheless, some showing of direct interest must be shown, particularly when the proceedings concern the internal affairs of an applicant.

The applicable statute (K. S. A. 66-118a) governing review proceedings defines a "party" as including any person, corporation, etc., "interested" in any matter pending before the State Corporation Commission or in proceedings for review of an order or decision of the commission.

K. S. A. 66-118b provides in substance, pertinent to the issue here, that "any person being dissatisfied" with any order of the commission may apply for a rehearing and if the rehearing is denied then under K. S. A. 66-118c "the applicant" may within thirty days apply to the district court of the county in which the order of the commission is to become effective for a review of such order or decision.

"Interest," as used in 66-118a, has been spoken of by this court as embodying the usual requirements of a showing of interest and aggrievement as a prerequisite for standing. In *Pelican Transfer & Storage v. Kansas Corporation Commission*, 195 Kan. 76, 402 P. 2d 762, the term "aggrieved party" was used. In *Spena v. Goffe*, 112 Kan. 693, 212 Pac 1093, the term "directly injured" was used in this connection. The term "a person aggrieved" was used in a comment on the subject in *Bennett v. Corporation Commission*, 157 Kan. 589, 142 P. 2d 810.

In *Anderson v. Carder*, 159 Kan. 1, 150 P. 2d 754, the court was dealing with standing to appeal in court proceedings. However, we believe the requirements of "interest" and "aggrievement" for that purpose to be so analogous to the requirements in administrative proceedings that the language used is worthy of note. In *Anderson* this court stated:

"The question of what constitutes the necessary interest to give a person a right of appeal is often an interesting one. *Ordinarily a person cannot appeal from a judgment unless he has a particular interest therein and is aggrieved or prejudiced thereby. Ordinarily his interest must be immediate and pecuniary.* (*McLeod v. Palmer*, 96 Kan. 159, 150 Pac. 535; *Cardin v. Apple*, 150 Kan. 162, 92 P. 2d 32; *In re Estate of Doyle*, 152 Kan. 23, 30, 103 P. 2d 52; 2 Am. Jur., Appeal and Error, §§ 149, 150, 152; 4 C. J. S., Appeal and Error, § 186.) Appeals are not allowed for the purpose of settling abstract questions, however interesting or important to the public generally, but only to correct errors injouriously affecting the appellant. (2 Am. Jur., Appeal and Error, § 152, see, also, *Nicholas v. Lawrence*, 161 Va. 589, 171 S. E. 673; *Barriger v. Louisville Gas & Electric Co.*, 196 Ky. 268, 244 S. W. 690 [31 A. L. R. 1408])" (Emphasis supplied.) (p. 4.)

While this court has not been confronted with the application of statutory terminology to the question of standing in the context presented here, we believe the language used in the cases noted supports an interpretation of "interested party" as one who has an immediate and pecuniary interest which would be injuriously affected or aggrieved by the commission's order.

We find similar interpretations in other jurisdictions where like proceedings are governed by statutes or commission rules similar to our applicable statutes.

Standing to appeal a commission ruling was one of the questions in the factually similar case of *Eastern Maine Elec. Coop. v. Maine Yankee Atom. P. Co.*, (Me. 1967), 225 A. 2d 414. As here, the Maine case involved an application for approval of the issuance and sale of common stock before the Maine Public Utilities Commission. The

Maine Public Utilities Commission rules permitted intervention by persons other than original parties to the proceeding "who are directly and substantially affected by the proceeding" and require a showing "of the direct and substantial interest of the petitioner in such proceeding." The Maine Commission approved an issuance of common stock by Maine Yankee. Eastern Maine was permitted to intervene before the commission and appealed from the commission's order. Eastern Maine sought to establish standing on the ground that it was a customer of two Public Utility Companies which were established by the evidence as "potential" stockholders of Maine Yankee.

A citizen committee, comprised of people who were interested in the creation of a "potential" but as yet nonexistent competitor of the applicant, Maine Yankee, also attempted to gain standing to appeal.

The Supreme Court of Maine ruled that neither appellant had standing to attack the commission's order approving the issuance of stock by Maine Yankee. The court stated:

". . . The mere fact that the Commission saw fit either erroneously or as a mere act of grace to vouchsafe status as intervenors to these parties does not establish or ensure their standing as appellants or relieve them from the necessity of demonstrating on appeal that they have a viable interest in these proceedings. . . ." (p. 416.)

The court further noted with approval a portion of the Commission's decree:

". . . 'We were acting solely upon a request of management of a utility to issue and sell common stock and the risk, if any there be, falls wholly *upon the stockholders of the utility and not the ratepayer.*' (Emphasis ours.)" (pp. 416, 417.)

We believe the "potential" interest of Kansas-Nebraska in these proceedings closely resembles that of the prospective appellants in the Maine case, which was termed remote and speculative by the Maine court.

In the case of *In re Application of Neb. Power Co.*, 147 Nebr. 324, 23 N. W. 2d 312, the Nebraska court was concerned with standing to obtain judicial review of an order of the Nebraska Railway Commission. The applicable Nebraska statute (75-405, R. S. 1943.), in substance conferred standing in these terms "If . . . person or persons affected thereby shall be dissatisfied with the decision of the State Railway Commission . . . such person or persons affected may institute proceedings in the Supreme Court of Nebraska. . . ."

In the Nebraska case the appellant alleged it was a customer of an applicant who sought authority to issue and sell serial notes. In dismissing the appeal for lack of standing the Nebraska court interpreted the language of the statute to mean—

". . . any person or persons who either have a substantial right, a property right, or a pecuniary right that would be adversely or injuriously affected, or some right other than merely a general interest common to all members of the public that would be adversely or injuriously affected as a result of the order of the commission." (p. 329.)

In an older case, *Page v. Commonwealth*, 157 Va. 325, 160 S. E. 33, the Virginia Supreme Court, in considering the applicable statute (Code 1919, § 3832) which afforded appeal from a commission order to any party in interest, declared that "the interest here alluded to must be direct and not indirect and remote." The court further held that the mere fact that a party was permitted to intervene in commission proceedings did not make such intervenor a "party in interest."

In 2 Cooper, State Administrative Law, Section 2(A), General Tests, a general test is stated in this language:

"If an administrative rule or order either commands or prohibits action on the part of an individual, or if there is a reasonable probability that it may be in the future require or forbid action on his part, this is ordinarily enough to confer standing upon that individual to seek judicial review." (p. 538.)

See, also, 2 Am. Jur. 2d, Administrative Law, § 575, p. 395; 73 C. J. S., Public Administrative Bodies and Procedure, § 176 [Right of Review—Interest in General], pp. 517, 518.

In the instant case the commission's order neither commands nor prohibits action on the part of Kansas-Nebraska. Viewed in the light of the rationale of the authorities mentioned, Kansas-Nebraska's allegations concerning a "potential merger," which the record shows has not actually been pending since November 1967, are too speculative and remote to constitute an interest which entitled Kansas-Nebraska to judicial review of a commission order dealing only with a stock issue of Kaneb. Under the statutes governing judicial review, which we have referred to, the "interest" of an "interested" party must be direct, not indirect and remote.

Accordingly, we hold the district court erred in failing to sustain the motion to dismiss presented by the commission and Kaneb.

The judgment is reversed with directions that the order of the State Corporation Commission be reinstated.