NOT DESIGNATED FOR PUBLICATION

No. 124,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUDITH L. WELLS,
*Appellant*,

v.

KANSAS CORPORATION COMMISSION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Opinion filed August 19, 2022. Affirmed.

*Judith L. Wells*, appellant pro se.

*Jonathan R. Myers*, assistant general counsel and special assistant attorney general, Kansas Corporation Commission, for appellee.

Before HILL, P.J., COBLE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM:  Judith L. Wells appeals the trial court's dismissal of her amended petition for judicial review of a decision by the Kansas Corporation Commission (Commission). We find no error in the district court's ruling and affirm.

Prior to the present proceedings, in a case involving a permit application by Cross Bar Energy, LLC (Cross Bar), Cross Bar sought a permit for a saltwater injection oil well. In deciding the matter, the Commission interpreted the regulatory requirement that a person protesting a well application under K.A.R. 82-3-135a and K.A.R. 82-3-135b must show a "direct and substantial interest" in the proceeding. In its order (*Cross Bar* Order),

1

the Commission interpreted this phrase to mean that persons filing protests under K.A.R. 82-3-135a and K.A.R. 82-3-135b must show that they satisfy Kansas' traditional two-part test for standing. Under this traditional test, a protester must show a direct and substantial interest in the proceeding by demonstrating that (1) the protester suffered a cognizable injury and (2) there is a causal connection between the injury and the challenged conduct.

On April 5, 2018, the Commission ordered that this test for standing shall have precedential effect in further proceedings before the Commission in accordance with K.S.A. 77-415(b)(2)(A). K.S.A. 77-415(b)(1) deals generally with the requirement that state agencies comply with the requirements of the rules and regulations filing act. K.S.A. 77-415(b)(2)(A)(i) provides:

> "(2) Notwithstanding the provisions of this section:
> (A) An agency may bind parties, establish policies, and interpret statutes or regulations by order in an adjudication under the Kansas administrative procedure act or other procedures required by law, except that such order shall not be used as precedent in any subsequent adjudication against a person who was not a party to the original adjudication unless the order is:
> (i) Designated by the agency as precedent."

A few months later, Midstates Energy Operating, LLC (Midstates) applied to the Commission for authorization to inject saltwater into several oil wells and to increase the injection pressure in all wells covered by Midstates' permit in Douglas County. Wells and several other persons protested the application.

Wells and the other protesters received a form letter from the Commission acknowledging receipt of the protests. The letter instructed protesters to advise if a hearing is requested. If none is requested, no hearing "will be scheduled and the application will be handled administratively and your protest will be noted." The letter continued:

"Commission staff has the duty to represent the public in general in recommending approval or denial of applications for injection or disposal well authority. One of the Commission's primary concerns is the protection of our groundwater and environment. If no hearing is held on this application, your objection will be taken into consideration by our staff in making a recommendation on this application. All of our staff geologists and technicians have qualified as expert witnesses and are sensitive to the concerns expressed by you and the citizens of our State."

Wells' allegations in her protest document included the following assertions:

"b. 'Four injection wells on the lease with allowable injection rates of 146,000 barrels at 500 psi every year for the life of the wells unless revoked by the Commission for good cause seems excessive. Ground water run off abounds in this area which drains directly into the Wakarusa River tributaries. Neighboring leases are for 40 barrels a day at lower pressures.'

"c. 'The applicant needs to be forthcoming as to the source of all this wastewater requested by the applications.'

"d. 'Much investigation needs to occur to determine the impact to the environment of more injections with little production to show for it in a limited area on top of the over pressurization that has gone on around the Thrasher lease.'

"e. 'Failure to require operators to remediate wells they assumed when they assumed a lease allows an operator to run the existing producing wells without following Commission regulations for abandoned EOR's they transferred with the lease. This practice does not protect the usable water of the state from actual or potential pollution from any well, as required by K.S.A. 55-152(a).'"

Wells did not disclose to the Commission in her protest document that while she lived in Mission Hills, Johnson County, she owned 160 acres near the proposed saltwater injection well in Douglas County.

3

Midstates moved to dismiss the protests of Wells and the others. The Commission granted Midstates' motion. The Commission held that one protesting the granting of an application such as Midstates' application must have a valid interest in the application. Citing K.A.R. 82-3-135b(a), the Commission stated:

"[T]he protest must 'include a clear and concise statement of the direct and substantial interest of the protester in the proceeding, including specific allegations as to the manner in which the grant of the application will cause waste, violate correlative rights, or pollute the water resources of the state of Kansas.'"

Referring to the allegations set forth above, the Commission found that Wells does not allege "that she herself personally suffers some actual or threatened injury separate from a grievance that would be common to all members of the public." Thus, Wells failed to satisfy the first element of the *Cross Bar* test for standing—that the protester suffered a cognizable injury. Accordingly, the Commission dismissed Wells' protest for lack of standing.

Wells petitioned for judicial review, arguing in her petition that the Commission in the *Cross Bar* matter misapplied the law in adopting the *Cross Bar* test for standing. The Commission moved to dismiss on the grounds that Wells (1) lacked standing to file her protest with the Commission and (2) she lacked standing to petition the district court for judicial review.

The district court granted Wells leave to file an amended petition to add allegations on the issue of her standing to petition the court for judicial review. Wells did so. Ruling on Midstates' motion, the district court held that Wells had standing for judicial review of the agency action in dismissing her protest of the saltwater injection permit. But the court also held that Wells failed to establish that the Commission's adoption of the Kansas traditional two-part standing test (1) usurped judicial powers or

4

(2) unlawfully restricted Wells' constitutional right to petition the government for grievances.

Wells appeals.

*Wells Had Standing in the District Court for Judicial Review*

As a preliminary matter, the district court held that Wells had standing for judicial review of the Commission's action in dismissing her protest of the saltwater injection permit. The Commission claims this was error, but the Commission did not cross-appeal this decision. Normally, K.S.A. 2021 Supp. 60-2103(h) requires an appellee to file a notice of cross-appeal from adverse rulings to preserve those issues for appellate review. See *Lumry v. State*, 305 Kan. 545, 553-54, 385 P.3d 479 (2016). But standing is a component of subject matter jurisdiction and, as a result, it can be raised at any time, including for the first time on appeal. *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021). Accordingly, we will address this issue.

The Commission claims that Wells failed to allege facts that would give her standing to seek judicial review. But Wells asserted that the Commission dismissed her from participating in the hearings on Midstates' application for a saltwater injection well, which the district court determined was based on her lack of standing. The dismissal of Wells' protest for lack of standing was a cognizable injury caused by the agency action.

This was not Wells' first rodeo. Wells protested a 2018 permit application by Unit Petroleum Company (UPC) for an enhanced oil recovery well in Reno County. *Wells v. Kansas Corp. Comm'n*, No. 122,575, 2021 WL 137417 (Kan. App.) (unpublished opinion), *rev. denied* 314 Kan. 859 (2021). One of Wells' claims was that the Commission did not have the authority to adopt K.A.R. 82-3-135b(a), which requires one protesting a well application to show a "direct and substantial interest" in the

5

proceeding. The operator moved to dismiss Wells' protest for lack of standing to participate in the Commission's proceedings. The Commission agreed. Wells petitioned for judicial review, arguing that the Commission did not have authority to adopt the regulations it relied on in dismissing her protest.

On judicial review, Wells argued before the district court that she was entitled to judicial review because she had standing under K.S.A. 77-611—the statute that deals with standing to obtain judicial review of agency actions. Rather than dismissing Wells' action for judicial review, the district court heard the matter on the merits and ultimately denied relief. On appeal, this court noted: "The Commission's staff, in its answer to Wells' petition for judicial review, admitted Wells had standing if she was challenging the dismissal of her protest because the dismissal was specifically directed towards Wells." *Wells*, 2021 WL 137417, at *3. On appeal to this court, the Commission did not reverse its position on Wells' standing before the district court.

In our present case, Wells is in the same position before the Commission with respect to the issue of standing. The dismissal of her protest in the Midstates' proceedings was based on the Commission's determination that she was subject to—but unable to satisfy—the *Cross Bar* test for standing. The *Cross Bar* test for standing is one step removed from the "direct and substantial interest" provision of K.A.R. 82-3-135b(a), which she litigated in the UPC well application case. Wells had standing to seek judicial review of her dismissal from the Commission's proceedings in this matter.

*Wells' Claims*

Wells claimed that the district court erred (1) in its analysis of her claims by misapplying caselaw and statutes and by considering Midstates' motion to dismiss based only on the allegations in her amended petition; (2) in finding that the Commission had the authority to interpret K.A.R. 82-3-135b; (3) in finding that the Commission did not

6

violate the separation of powers doctrine by adopting the *Cross Bar* test for standing—the Kansas traditional two-part test for standing, which is reserved for the judicial branch; and (4) in finding that the Commission's *Cross Bar* test violated her constitutional right to petition the government.

ANALYSIS

*Wells' Claims that the District Court Erred in Its Analysis of Various Cases and Statutes Are Not Before Us*

Wells' appellate brief contains numerous critiques of the district court's analysis of the issue of her standing before the Commission. But in our appellate review, we treat Wells' appeal as having bypassed the district court and having been made directly to us. See *Board of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 318, 393 P.3d 601 (2017). As stated in *Johnson v. Kansas Employment Security Bd. of Review*, 50 Kan. App. 2d 606, 610, 330 P.3d 1128 (2014): "An appellate court exercises the same statutorily-limited review of the agency's action as the district court, as though the appeal had been made directly to the appellate court." Thus, the correctness of the Commission's ruling on Midstates' motion to dismiss—not the correctness of the district court's analysis—is the issue before us.

Under K.S.A. 77-621(a)(1) of the KJRA, "The burden of proving the invalidity of agency action is on the party asserting invalidity." K.S.A. 77-621(c) sets forth the grounds for relief for one challenging the agency's action. The possible grounds for relief based on the claims made in Wells' appeal are as follows:

- The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

7

- The agency has acted beyond the jurisdiction conferred by any provision of law; or
- The agency has erroneously interpreted or applied the law.

  K.S.A 77-621 (c)(1), (2), and (4).

All of Wells' claims raise issues of law over which we have de novo review. Midstates' motion turns on the issue of standing. Whether a protester had standing before the Commission is a question of law over which our review is unlimited. *League of Women Voters of Kansas v. Schwab*, 62 Kan. App. 2d 310, 317, 2022 WL 2184823, at *4 (Kan. App. 2022) ("[S]tanding, like other jurisdictional issues, is a question of law subject to unlimited review."). And that issue is resolved by determining whether the Commission had the authority to enact the challenged *Cross Bar* standing test; whether the *Cross Bar* standing test usurps or infringes on the judicial power of our courts or violates the separation of powers doctrine; or whether this standing test violates Wells' constitutional right to petition the government for redress of grievances. Finally, review of a ruling on a motion to dismiss is always an issue of law which requires us to consider the motion anew. *Williams v. C-U-Out Bail Bonds, LLC*, 310 Kan. 775, 784, 450 P.3d 330 (2019). Thus, while we certainly look to the district court's analysis of Wells' claims which may be helpful and instructive to us, we ultimately have the obligation to undertake our own analysis to determine whether the Commission erred in granting Midstates' motion to dismiss.

*The Commission Had Authority to Interpret K.A.R. 82-3-135b*

Wells claims that the Commission exceeded its authority in interpreting K.A.R. 82-3-135b. Under K.S.A. 77-415(b)(2)(A), an administrative agency—such as the Commission—may interpret its own regulations. This is clear statutory authority for the Commission to interpret K.A.R. 82-3-135b. We find no support for the claim that the Commission exceeded its authority in interpreting K.A.R. 82-3-135b.

To expand on our conclusion, K.S.A. 74-623 grants the Commission exclusive jurisdiction and authority to regulate oil and gas activities in Kansas. As part of its regulation of these activities, the Legislature has enacted the following statutory mandates for the Commission:

- K.S.A. 2021 Supp. 55-152(a) requires the Commission to "adopt such rules and regulations necessary for the implementation of this act including provisions for the construction, operation and abandonment of any well and the protection of the usable water of this state from any actual or potential pollution from any well."

- K.S.A. 55-704 requires the Commission to promulgate rules and regulations for the prevention of waste.

- K.S.A. 2021 Supp. 55-901 directs the Commission to adopt rules and regulations as may be just and equitable to oversee oil or gas wells producing salt water.

These statutes mandate that the Commission adopt its own rules and regulations in order to carry out its authority to regulate oil and gas activities in Kansas, including the activities associated with Midstate's proposed saltwater injection wells. With respect to injection wells, the Commission established the following regulations:

- Under K.A.R. 82-3-400(a), injection wells are permitted only if the following conditions are met:

    "(1) The operator has filed an application for injection authority with the conservation division in accordance with K.A.R. 82-3-401 and provided notice in accordance with K.A.R. 82-3-402.

9

> "(2) The conservation division has issued a written permit granting the application."

• K.A.R. 82-3-401(a) lists the information an operator must provide to the conservation division on an injection well application.

• K.A.R. 82-3-403(c) states the factors that the conservation division must consider when issuing a permit authorizing injection including, for example, "determinations shall be made that [well sites] are separated from fresh and usable water formations by impervious beds to give adequate protection to the fresh and usable water formations."

• K.A.R. 82-3-402 establishes notice requirements for the application, including the requirements of publication in the official county newspaper and notifying parties whose acreage lies within a one-half mile radius of the project's boundaries.

• K.A.R. 82-3-402(c) permits objections to well applications, referencing the notice provisions of K.A.R. 82-3-135a(c) and the complaint or objection requirements of K.A.R. 82-3-135b.

• K.A.R. 82-3-135a requires those applying for oil well permits to give notice as follows:

> "(c) Environmental matters. Each applicant for an order or permit filed pursuant to K.A.R. 82-3-400 through 82-3-412 and K.A.R. 82-3-600 through 82-3-607 shall give notice of the application on or before the date the application is filed with the conservation division by mailing or delivering a copy of the application to the following:
>> (1) Each operator or lessee of record within a one-half mile radius of the well or of the subject acreage;

(2) each owner of record of the minerals in unleased acreage within a one-half mile radius of the well or of the subject acreage; and

(3) the landowner on whose land the well affected by the application is located.

"(d) Publication of notice. Notice of the application shall be published in at least one issue of the official county newspaper of each county in which the lands affected by the application are located."

• K.A.R. 82-3-135a(e) provides a window for filing protests:

"(e) Protests. Once notice of the application is published pursuant to subsection (d), the application shall be held in abeyance for 15 days for production matters and 30 days for environmental matters, pending the filing of any protest pursuant to K.A.R. 82-3-135b. If a valid protest is filed or if the commission, on its own motion, deems that there should be a hearing on the application, a hearing shall be held. The applicant shall publish notice of the hearing pursuant to K.A.R. 82-3-135."

• K.A.R. 82-3-135b establishes who may protest:

"(a) A protest may be filed by any person having a valid interest in the application. Each protest shall be submitted in writing and shall provide the name and address of the protester and the title and docket number of the proceeding. The protest shall include a clear and concise statement of the direct and substantial interest of the protester in the proceeding, including specific allegations as to the manner in which the grant of the application will cause waste, violate correlative rights, or pollute the water resources of the state of Kansas."

Once the Commission has adopted a regulation requiring a protester to show a "direct and substantial interest" in the proceeding, the Commission is entitled to interpret its own regulation in order to determine who has a direct and substantial interest in the Commission's proceedings and who does not. See K.S.A. 77-415(b)(2)(A)(i). That is what the Commission did in adopting the *Cross Bar* test for standing. The Commission had authority to interpret K.A.R. 82-3-135b.

11

*The Commission's* Cross Bar *Test for Standing Incorporated Into K.A.R. 82-3-135b Does Not Usurp or Infringe Upon Judicial Power or Violate the Separation of Powers Doctrine*

In the proceedings before the district court, Wells requested a "partial review of the Crossbar Precedential Order . . . limited to the adoption of the Kansas traditional test for standing." Her contentions included the claims the *Cross Bar* test for standing usurps judicial power and violates the separation of powers doctrine. The district court stated:

> "A usurpation of power would exist if there was found to be significant interference by one branch of government in the powers of another branch. *State v. Beard*, 274 Kan. 181, 186, 49 P.3d 492 (2002). However, the Petitioner provides no authority for the argument that the Commission's use of the components of traditional standing in any way improperly infringe on the judicial function."

We agree. Wells spends considerable time expounding on the fact that under our Kansas Constitution, judicial power is vested in our court system, which under our Constitution is declared to consist of our Supreme Court, the district courts, and such other courts as provided by law. Those other courts are the Kansas Court of Appeals, created by the Legislature, and the various municipal courts created by our municipalities and charged with applying and enforcing municipal ordinances. Our Kansas courts do not include the multitude of administrative agencies created by the Legislature to carry out specific legislative mandates. Wells contends that when the Commission—one such agency created by the Legislature to carry out a specific delegated regulatory function—adopts a correlative rule or standard to be used by our court system (here, a test for standing), that rule or standard somehow infringes upon the power of our courts to function. Wells cites no case in support of this notion. Nor do we find, in the history of the decisions of our appellate courts, any case involving the Commission, or any other administrative agency created by our Legislature, that says so with respect to the issue of standing or any other rule adopted by an administrative agency for the orderly administration of its regulatory function.

We agree with Wells' observation that administrative agencies are distinct from the judiciary. But we have read and repeatedly reread Wells' appellate brief on this point and are at a total loss in discerning anything approaching a cogent argument to support her claim of usurpation of power that is supported by either statutory or caselaw. As the district court aptly explained, citing *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 205 Kan. 838, 846, 473 P.2d 27 (1970):

> "The Commission is free to clarify its standing requirement under the administrative regulations as long as it does not expand or contract its jurisdiction under the statute. The purpose of a standing requirement is to reserve participation in the process to persons who have suffered, or will actually suffer, the direct consequences of the administrative action. This purpose was defined in *Kansas-Nebraska*:
>
>> "'[A]ny person or persons who either have a substantial right, a property right, or a pecuniary right that would be adversely or injuriously affected, or some right other than merely a general interest common to all members of the public that would be adversely or injuriously affected as a result of the order of the commission [would have standing].' *Kansas-Nebraska*, 205 Kan. at 846."

Finally, Wells does not challenge in this appeal the authority of the Commission, under K.A.R. 82-3-135b, to require protesters to have a "direct and substantial interest" in the proceedings. She cites no case that has determined that requiring protesters to show a "direct and substantial interest" in proceedings like these is beyond the Commission's authority. Her challenge is to the Commission interpretation of "direct and substantial interest" to mean that (1) the protester suffered a cognizable injury and (2) there is a causal connection between the injury and the challenged conduct. Courts generally defer to an agency's interpretation of its own regulations. *Tonge v. Werholtz*, 279 Kan. 481, 484, 109 P.3d 1140 (2005).

13

Wells does not explain how requiring protesters to show injury and causation is an illegal expansion and intrusion into judicial power beyond the requirement in K.A.R. 82-3-135b that a protester has a "direct and substantial interest" in the proceedings. If one is an illegal encroachment on judicial power, we fail to see how the other is not. We find no support in legal authority or in logic to support this claim of error.

*Wells Has Abandoned Her Claim that the* Cross Bar *Test for Standing Violates Her Constitutional Right to Petition the Government*

Wells contends that adopting the Kansas traditional test for standing violates her constitutional right to petition the government for redress of grievances. Constitutional claims may be raised at the agency level, but they are decided by the courts. *In re Property Valuation Appeals of Various Applicants*, 298 Kan. 439, 446-47, 313 P.3d 789 (2013). Here, we have no record that this constitutional claim was raised below. But she is entitled to raise the issue for the first time here in her appellate brief.

Supreme Court Rule 6.02(a)(4) (2022 Kan. S. Ct. R. at 36) relates to the mandatory contents of an appellant's brief and provides it must contain: "A concise but complete statement, without argument, of the facts that are material to determining the issues to be decided in the appeal." Under Rule 6.02(a)(5), an appellant's "arguments and authorities relied on" are to be separately stated by issue. (2022 Kan. S. Ct. R. at 36).

As stated in *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595, 730 P.2d 1109 (1986): "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel." The court in *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 505 P.3d 775, *rev. denied* 315 Kan. 968 (2022), considered the same issue facing us today with respect to the adequacy of a pro se appellant's brief. There, the court held:

14

"[Joritz'] pro se status does not allow her to ignore appellate procedures, including Rule 6.02(a)(4). Because Rule 6.02(a)(4) explicitly prohibits arguments in fact sections, there is no excuse for Joritz' failure to follow this rule. For this reason, we will not consider the approximately 10 arguments that Joritz has included in her facts section." 61 Kan. App. 2d at 500.

We agree with the analysis in *Joritz*. Accordingly, we ignore any argument that is made in Wells' Statement of Facts and turn to the Arguments and Authorities section of her brief.

Wells having raised her constitutional claim on appeal is not enough. She must argue the merits of her claim to satisfy her burden of proving the unconstitutionality of the *Cross Bar* standard. In short, an issue not briefed, or an issue not adequately briefed, is deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018); *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Moreover, a point raised incidentally in a brief and not argued therein is also deemed waived or abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017).

A close reading of the Arguments and Authorities section of Wells' appellate brief discloses the following references to her claim that the *Cross Bar* Order interferes with her constitutional right to petition the government:

- Wells states that the *Cross Bar* Order is a jurisdictional barrier that violates Article 3 of the Kansas Constitution Bill of Rights.
- She states that she is not a litigant but simply someone trying to "petition her government."
- She states that she claimed before the district court that the *Cross Bar* Order violated her rights "under Section Three of the Kansas Bill of Rights." So the district court ordered more briefing on that issue.

- She states that the district court's final decision identified Wells' right to petition the government as one of two issues.
- She states that K.S.A. 2021 Supp. 60-5320(b) encourages and safeguards the right to "petition . . . in connection with a public issue," which the *Cross Bar* requirement restricts.
- She cites a portion of the Commission's motion to dismiss in which the Commission argues that the *Cross Bar* Order does not violate the right to petition the government.

Wells cites K.S.A. 2021 Supp. 60-5320(b) for its statement of the purpose of the Public Speech Protection Act. But she does not explain how she comes under the provisions of the Act, how the Act supports her claim, or how the *Cross Bar* Order is a per se violation of her constitutional right to petition her government or an unconstitutional infringement of that right as applied to her. We need not consider this claim because Wells provides no arguments for us to evaluate; she merely repeatedly restates her claim that that the *Cross Bar* Order violates her right to petition the government. This claim has been abandoned. See *In re Marriage of Williams*, 307 Kan. at 977.

Wells has failed to carry her burden of establishing that the Commission erred in dismissing her protest for lack of standing.

Affirmed.